595 So.2d 1206 (1992)
WILLAMETTE INDUSTRIES, INC., Plaintiff-Appellee,
v.
STATE of Louisiana WORKER'S COPENSATION SECOND INJURY BOARD, Defendant-Appellant.
No. 90-923.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1992.
Joe P. Williams, Natchitoches, for plaintiff-appellee.
Marcia Avery, Baton Rouge, for defendant-appellant.
*1207 Before FORET and LABORDE, JJ., and PATIN[*], J. Pro Tem.
LABORDE, Judge.
In this reimbursement suit, appellant, the State of Louisiana Worker's Compensation Second Injury Board, appeals a trial court ruling which held appellee, Willamette Industries, Inc., was entitled to reimbursement from appellant pursuant to La.R.S. 23:1378. We affirm.

FACTS
This is a suit for reimbursement of weekly indemnity benefits and medical expenses which plaintiff, Willamette Industries, Inc., has paid to its statutory employee, Ben Rodisch. Ben Rodisch worked for the Earl Clark Logging Company (Earl Clark) who worked as a contractor for plaintiff cutting and hauling timber which plaintiff purchased. Ben Rodisch's left elbow was permanently partially disabled when he began working for Earl Clark, and Earl Clark had knowledge of Rodisch's pre-existing permanent partial disability.
On or about October 6, 1983, Ben Rodisch sustained a crushing injury to his right ankle from a falling log. His condition was diagnosed as an open fracture, dislocation of right ankle, repair of deltoid ligament and anterior capsule, with arthritis of the right ankle. Arthrodesis (fusion of the right ankle) was performed in February of 1985.
Mentor Insurance Limited (Mentor) was Earl Clark's worker's compensation carrier. After Ben Rodisch's injury on October 6, 1983, Mr. Rodisch filed a claim for compensation with Mentor and began receiving benefits. In July of 1985, Mentor went into receivership, and shortly thereafter Rodisch's benefits were discontinued. Subsequent to Mentor's receivership, Earl Clark declared bankruptcy. Thereafter, Rodisch filed a suit for worker's compensation benefits against plaintiff, his statutory employer. Rodisch prevailed in this suit, and plaintiff began paying Rodisch's benefits. Plaintiff then filed a claim for reimbursement with the Louisiana Worker's Compensation Second Injury Board, which the board denied. This suit then followed. The trial court held in favor of the plaintiff finding plaintiff was entitled to reimbursement. Defendant now appeals this ruling.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment of error, defendant alleges the trial court erred in finding Earl Clark's knowledge of Rodisch's pre-existing permanent partial disability should be imputed to the plaintiff in order to satisfy the knowledge requirement of La.R.S. 23:1378. La.R.S. 23:1378 reads in pertinent part as follows:
A. An employer operating under this Chapter who knowingly employs or knowingly retains in his employment an employee who has permanent partial disability, as defined in Subsection (F) hereof, shall be reimbursed from the Secondary Injury Fund as follows:
(1) Supplemental earnings benefits or permanent partial benefits. If an employee incurs a compensable disability which merges with a preexisting permanent partial disability, as defined in Subsection (F) hereof, supplemental earnings benefits or permanent partial benefits, pursuant to R.S. 23:1221(3) or (4), the employer shall pay all benefits provided in this Chapter, but such employer shall be reimbursed from the Second Injury Fund for sixty percent of all benefits which the employer has been required to provide pursuant to R.S. 23:1221(3) or (4).
(2) Permanent total disability. If an employee incurs a compensable disability which merges with a pre-existing permanent partial disability, as defined in Subsection (F) of this Section, to cause permanent total disability, the employer shall pay all benefits provided by this Chapter, but such employer shall be reimbursed from the Second Injury Fund for all compensation in excess of the first one hundred four weeks of disability compensation.
* * * * * *

*1208 (4) An employer entitled to reimbursement from the Second Injury Fund shall be reimbursed from said fund for fifty percent of the first ten thousand dollars paid for necessary medical, surgical, and hospital services and medicine for the same injury; thereafter, the employer shall be reimbursed from said fund for all sums paid pursuant to R.S. 23:1203 for necessary medical, surgical, and hospital services and medicine.
B. The employer or his insurer, whichever of them makes the payments or becomes liable, shall, within fifty-two weeks after the first payment of weekly compensation or death benefits, notify the board in writing of such facts and furnish such other information as may be required by the board to determine if the employer or his insurer is qualified for reimbursement from the worker's compensation second injury fund. Upon proper showing, the board may extend the filing period provided under the provisions of this Subsection.
Whether a principal employer's knowledge of an employee's pre-existing permanent partial disability should be imputed to the employee's statutory employer, in order for the statutory employer to be allowed to collect reimbursement from the Louisiana worker's compensation second injury fund, has not previously been addressed by any court in this state.[1] The trial court in this matter interpreted the pertinent statute to allow Earl Clark's knowledge to be imputed to the plaintiff, and it further found the knowledge requirement of the statute was met. In so holding, the trial court was guided by the primary purpose behind the second injury fund of encouraging employers to employ individuals with permanent partial disabilities. The plaintiffs allege the trial court's holding to impute the knowledge should be upheld. On the other hand, the defendants argue a literal and narrow construction of the statute should be applied which requires actual rather than imputed knowledge on the part of the statutory employer. We agree with the trial court's finding and hold Earl Clark's knowledge of Rodisch's pre-existing partial disability should be imputed to his statutory employer. This holding is supported by the very purpose of the statute which is to encourage a direct employer to hire persons with permanent partial disabilities. This purpose would be defeated if statutory employers, who may eventually have to make worker's compensation payments to an injured employee, are prevented from obtaining reimbursement by the Second Injury Fund because only the direct employer had actual knowledge of any such pre-existing injury. Should the board's interpretation of the statute be adopted, those in the position of statutory employers may encourage direct employers not to employ individuals with pre-existing partial disabilities. This would defeat the very purpose behind this statute.
Furthermore, the statute does not specifically require that both the direct employer and any statutory employer, who might be responsible for the payment of worker's compensation benefits, have actual knowledge in order to recover from the Second Injury Fund. The statute contemplates a person in a position to hire and fire should have knowledge of the permanent partial disability prior to the second injury in order to qualify the paying entity for reimbursement of worker's compensation benefits through the Second Injury Fund. The basic definition of statutory employment is that a principal employer contracts with another entity known as the direct employer which has its own employees. Therefore, the statutory employer is not in a position to have direct contact with the employees of the direct employer. To require a statutory employer to have actual knowledge of such employees' pre-existing permanent partial disabilities impedes the very policy which the statute was designed to promote. For example, in this case, Ben Rodisch was not hired directly by the statutory employer, Willamette Industries, Inc. *1209 He was hired by Earl Clark Logging Company. If a company such as Willamette Industries, Inc. is denied access to the Second Injury Fund because of its lack of direct knowledge of the statutory employees permanent partial disability, it would have to protect itself by informing the direct employers underneath its control not to hire the partially handicapped or by not contracting with those direct employers who had hired such employees. Such a policy would defeat the very purpose behind this statute to provide employment opportunities for partially disabled workers. Inasmuch as the trial court's interpretation of this statute promotes the intended purpose of this statute, we affirm its holding finding that a direct employer's actual knowledge of an employee's pre-existing permanent partial disability should be imputed to that employee's statutory employer.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment of error, defendant alleges the trial court erred in finding Ben Rodisch's second injury merged with the pre-existing permanent partial disability to cause the injured worker to be totally and permanently disabled. The record indicates Ben Rodisch is fifty five years old and has a fifth grade education. He served in the United States Navy for nearly fourteen years when his left arm was seriously injured at the elbow. In 1965, Rodisch was discharged from the Navy as a result of his disabling injury. Rodisch's left elbow is permanently impaired which is a noticeable condition. The record further supports the trial court's finding that Rodisch's second injury combined with his pre-existing permanent disability of the left elbow renders him totally and permanently disabled. Rodisch's right ankle is permanently disabled as a result of the October 6, 1983 accident. The testimony of Rodisch, Dr. Richard Galloway, as well as Dr. John Weiss indicates this ankle injury combined with the elbow injury renders Rodisch permanently and totally disabled given his educational level. Both Dr. Weiss, the treating physician, and Dr. Galloway, a vocational rehabilitation expert, were of the opinion there was nothing Rodisch could do from a vocational standpoint given his injuries and educational level. Plaintiff has directed this court to the case of Southern Casualty Insurance Company v. Louisiana Workmen's Compensation Second Injury Board, 478 So.2d 573 (La.App.2d Cir.1985). In this case, an employee's back injury combined with his mental retardation rendered the employee totally and permanently disabled. The Court stated:
"We have little difficulty within the context of these facts in finding that the previous statutorily defined partial permanent disability, mental retardation, merged with the subsequent back injury to create a substantially greater disability. Whereas the back injury, without the mental retardation, or the mental retardation without the back injury, would not necessarily preclude Mr. Smith from obtaining employment, the superimposition of one disability upon the other renders Mr. Smith virtually unemployable. Such a construction of the term, "merger" effects the most usual signification of the word. We therefore hold that the two injuries have "merged" within the meaning of the statute."
The same is true in Ben Rodisch's case. The ankle injury without the pre-existing left upper extremity disability would not have preclude Rodisch from obtaining employment. Both Rodisch and Dr. Galloway testified to this effect. However, a combination of these injuries prevents Rodisch from participating in gainful employment. We hold the combination of the disability to Rodisch's right lower extremity classifies him as permanently and totally disabled prohibiting him from securing and maintaining gainful employment.

DECREE
We affirm the trial court judgment as written. All costs of this appeal are to be paid by the Louisiana Worker's Compensation Second Injury Board.
AFFIRMED.
NOTES
[*] Judge Patin, retired, participated in this decision as Judge Pro Tempore.
[1] Prior to the rendition of this opinion, another panel of this court addressed this issue. See Brady v. State of Louisiana Worker's Compensation Second Injury Board, Docket Number 90-880.