857 So.2d 407 (2003)
NABORS DRILLING USA
v.
David DAVIS.
No. 2003-C-0136.
Supreme Court of Louisiana.
October 21, 2003.
*411 Mark L. Riley, Lafayette, for Respondent.
Michael B. Miller, Crowley, Miller & Miller, for Applicant.
WEIMER, Justice.
We granted certiorari in this case to review the correctness of the court of appeal's ruling ordering workers' compensation benefits forfeited for a claimant's failure to answer truthfully the employer's medical history questionnaire concerning a prior injury. After carefully reviewing the record and the applicable law, we conclude that under the circumstances of this case, the court of appeal erred in ordering the forfeiture because there was no proof the employer suffered any prejudice as statutorily required. Accordingly, we reverse the judgment of the court of appeal and reinstate the judgment of the workers' compensation judge dismissing the demand of the employer seeking to terminate benefits pursuant to LSA-R.S. 23:1208.1.

FACTS AND PROCEDURAL HISTORY
On January 18, 1994, claimant, David Davis, was working for Petro Star Corporation when he injured his right shoulder and right knee while lifting 100 pound mud sacks. He began treatment with Dr. John Cobb, an orthopedic surgeon, who diagnosed him with impingement tendinitis of the rotator cuff with hypertrophy of the distal clavicle and the acromion. Surgery *412 was recommended, and in September 1994, Dr. Cobb performed a partial acromionectomy, a resection of the distal clavicle, a resection of the coracoacromial ligament and an exploration of the cuff. Davis eventually returned to work, but not, apparently, without difficulty. In a follow-up examination on November 20, 1995, Dr. Cobb noted that Davis had returned to performing fairly substantial work with his shoulder. According to Dr. Cobb: "[Davis] says he has been pulling slips and trying to work, but based on his problem with the clavicle and the pin that he has, I don't think that this is a reasonable thing for him to be doing. I think it is aggravating his pain and he may even be getting some degree of scaline spasm, which is causing the paresthesias. He is going to have to resolve to do primarily light type work activities and not return to this unrestricted work that he is doing at the present time." When Davis reported for a further examination on March 6, 1996, Dr. Cobb remarked: "[Davis] is going to try to do some shrimping, get his own boat. I think this is reasonable, where he doesn't have to overuse his shoulder and his arm, where he can actually rest it. I think he can do the work satisfactorily. I think working on the rigs, primarily handling the slips was what was causing his problem."
In May 1996, Dr. G. Gregory Gidman, an orthopedist, rendered a second medical opinion, in which he assigned Davis a 10% impairment of the upper extremity, which equates to a 6% impairment of the whole person, and recommended that Davis restrict his lifting to a medium level, performing heavy lifting occasionally, but not on a repetitive basis.
Approximately four years later, on September 28, 2000, Davis began working for Nabors Drilling USA as a floor hand on a Nabors drilling rig. As part of his employment with Nabors, Davis was asked to complete a medical history questionnaire. The questionnaire contained the following:
NOTICE: YOUR FAILURE TO ANSWER TRUTHFULLY ANY QUESTIONS ABOUT PREVIOUS INJURIES, DISABILITIES OR OTHER MEDICAL CONDITIONS MAY RESULT IN FORFEITURE OF WORKERS' COMPENSATION BENEFITS UNDER LSA R.S. 23:1208.1.
In answering the inquiries posed by the questionnaire, Davis responded negatively to the questions "Have you ever had surgery?" and "Have you ever had an injury or illness as a result of your job or work?" These responses were, obviously, untruthful.
Davis worked for Nabors from September 28, 2000, until November 14, 2000, without incident. On the latter date, Davis was performing his regular duties, pulling drill slips, when he felt a pop in his back and experienced a burning and pulling sensation in his low back radiating into the right leg. When the situation did not resolve itself by the next day, he reported the incident and sought medical treatment. He began seeing Dr. Cobb, among other physicians. Dr. Cobb requested an MRI and EMG. The MRI of the lumbar spine revealed a disc herniation at the L5-S1 level, and the EMG revealed right L5 radicular changes. Dr Cobb recommended surgery. In addition, he spoke to Davis "about the implications of him returning to the oil field, that he would have to get something lighter."
On August 6, 2001, Nabors filed a disputed claim for compensation seeking a determination that, pursuant to LSA-R.S. 23:1208.1, Davis has forfeited his right to workers' compensation benefits for his failure to answer truthfully the medical history questionnaire (commonly referred to in the workers' compensation arena as the *413 "second injury fund questionnaire") regarding his prior shoulder injury. According to Nabors, Davis' failure to disclose his preexisting medical condition prejudiced Nabors' right to receive Second Injury Fund reimbursement for Davis' current injuries, resulting in the forfeiture of his right to benefits under the Louisiana Workers' Compensation Act.
The matter was tried on stipulations and documentary evidence on April 4, 2002. At the conclusion of the hearing, the workers' compensation judge determined that Nabors failed to prove a merger between the two work injuries and, as a result, failed to prove prejudice to the employer's right to receive reimbursement from the Second Injury Fund. Accordingly, the workers' compensation judge signed a judgment dismissing Nabors' demand seeking to terminate benefits under LSA-R.S. 23:1208.1.
Nabors appealed, and the court of appeal reversed. Nabors Drilling USA v. Davis, 02-0751 (La.App. 3 Cir. 12/11/02), 833 So.2d 534. In an opinion issued December 11, 2002, the court of appeal first determined that the workers' compensation judge was clearly wrong in her factual conclusions with respect to the issue of merger. The court found that the evidence introduced by Nabors established a sufficient merger between Davis' prior and current injuries to satisfy the requirements of LSA-R.S. 23:1371(C)(2). The court of appeal then determined that because Nabors had no knowledge of the preexisting permanent partial disability, it could not seek reimbursement from the Second Injury Fund and thus has been prejudiced by Davis' failure to answer truthfully the medical history questionnaire. Under these circumstances, the court of appeal held that Nabors is entitled to have Davis' workers' compensation benefits forfeited.
Upon claimant's application, we granted certiorari to review the correctness of the ruling of the court of appeal ordering the forfeiture of Davis' right to receive workers' compensation benefits. Nabors Drilling USA v. Davis, 03-0136 (La.4/4/03), 840 So.2d 1209.

LAW AND DISCUSSION
In order "to encourage the employment of physically handicapped employees who have a permanent, partial disability by protecting employers ... from excess liability for workers' compensation for disability [which may result] when a subsequent injury to such an employee merges with his preexisting permanent physical disability to cause a greater disability than would have resulted from the subsequent injury alone," the legislature created the Second Injury Fund. LSA-R.S. 23:1371(A). An employer who "knowingly employs or knowingly retains in his employment" an employee who suffers from a permanent partial disability as defined by the statute is entitled to be reimbursed from the fund if that employee "incurs a subsequent injury arising out of and in the course of his employment resulting in liability for disability due to the merger of the subsequent injury with the preexisting permanent partial disability." LSA-R.S. 23:1378(A)(1).
In order to assist the employer in meeting its statutory burden of establishing that it "knowingly" hired a worker with a preexisting permanent partial disability so as to qualify for reimbursement from the second injury fund, LSA-R.S. 23:1208.1 permits the employer to obtain medical information from an employee or job applicant concerning preexisting conditions. The same statute that permits this inquiry also states that the employee's failure to answer the employer's inquiry truthfully shall result in the forfeiture of workers' *414 compensation benefits provided certain enumerated circumstances are met. Louisiana Revised Statute 23:1208.1 states:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type. [Emphasis added.]
Forfeiture is a harsh remedy; therefore, statutory forfeiture provisions such as LSA-R.S. 23:1208.1 must be strictly construed. Wise v. J.E. Merit Constructors, Inc., 97-0684 (La.1/21/98), 707 So.2d 1214, 1218. By its express terms, LSA-R.S. 23:1208.1 provides for forfeiture under three circumstances. There must be (1) an untruthful statement; (2) prejudice to the employer; and (3) compliance with the notice requirements of the statute. Id., citing Resweber v. Haroil Const. Co., 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7. The employer has the burden of proving each of the elements required by the statute. Wise, 707 So.2d at 1218. The lack of any one of the elements is fatal to the employer's avoidance of liability under the statute. Id.
As we noted in Wise, 707 So.2d at 1219, untruthful answers alone do not result in the forfeiture of benefits under LSA-R.S. 23:1208.1. The employer must also prove that it provided the employee with notice comporting with the dictates of the statute.[1] Notice is not an issue in this case.
In addition to the notice requirement, the legislature has decided to specifically impose a requirement that the untruthful statement concerning a prior injury will result in forfeiture of benefits only when the false statement causes prejudice to the employer. Louisiana Revised Statute 23:1208.1 states: forfeiture only occurs "provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund." See Resweber, 660 So.2d at 16. This proviso strikes a careful balance. It reflects the legislature's recognition of the harshness of the forfeiture penalty and attempts to ameliorate the harshness of that penalty for the individual who is simply in the position of trying to obtain or maintain gainful employment, while at the same time preserving the goal of the second injury fund, which is to enhance employment opportunities for those who have been previously disabled. Thus, it is not every untruthful statement on a medical history questionnaire that will result in the forfeiture of workers' compensation benefits for a subsequent work-related injury. It is only those statements that rise to the level of meeting the statutory *415 proviso of LSA-R.S. 23:1208.1 that will subject the employee to forfeiture.[2]
The "prejudice" that must be incurred by the employer for forfeiture to apply is specifically defined by the statute. The untruthful statement must "directly relate[ ] to the medical condition for which a claim for benefits is made," or it must "affect[ ] the employer's ability to receive reimbursement from the second injury fund." LSA-R.S. 23:1208.1. The first prong of the prejudice testthat the employee's untruthful answer "directly relate" to the medical condition that is the subject of the claimis not at issue in this case. The parties do not contend, nor was any evidence submitted to establish, that Davis' back injury was inevitable or very likely to occur because of the presence of the preexisting shoulder condition.[3]See, Wise, 707 So.2d at 1220, wherein the "directly relates" prong of the "prejudice" requirement is more thoroughly discussed.
It is the second prong of the "prejudice to the employer" test that is at issue in this case. This second prong requires that the employee's answer to the employer's medical history questionnaire "affect[] the employer's ability to receive reimbursement from the second injury fund." LSA-R.S. 23:1208.1.
To determine the effect on the employer's right to collect from the second injury fund, we must evaluate LSA-R.S. 23:1378(A) which provides that an employer shall be reimbursed from the second injury fund when the employer "knowingly employs or knowingly retains in his employment an employee who has a permanent partial disability," as defined by the statute. However, reimbursement is limited to those situations where the permanent partial disability "merges" with a subsequent injury "to cause a greater disability than would have resulted from the subsequent injury alone." LSA-R.S. 23:1371(A).
*416 As we explained in Wise, supra, an employer's right to reimbursement is not automatic. The employer is not entitled to reimbursement from the second injury fund merely because an employee with a pre-existing disability is subsequently injured. The employer has the burden of proving each element entitling him to reimbursement. Wise, 707 So.2d at 1220, citing Commercial Union Insurance Co. v. Workers' Compensation Second Injury Board, 94-1202 (La.App. 3 Cir. 3/1/95), 651 So.2d 933. Thus, to be reimbursed from the second injury fund, an employer must prove three elements. Id. First, the employer must prove that the employee had a permanent partial disability satisfying the requirements of LSA-R.S. 23:1378(F), i.e. that the employee's preexisting condition is of "such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed." Second, the employer must prove that he had actual knowledge of the employee's permanent partial disability before the occurrence of the injury forming the basis of the compensation claim. LSA-R.S. 23:1378(A)(4); Chandler Parts and Service, Inc. v. Louisiana Worker's Compensation Second Injury Board, 576 So.2d 1133 (La.App. 3 Cir.), writ denied, 580 So.2d 383 (La.1991). Finally, the employer must prove that the permanent partial disability merged with the injury to produce a greater disability. LSA-R.S. 23:1371(A); LSA-R.S. 23:1378(A); Wise, 707 So.2d at 1220.
In the instant case, Nabors argues that its rights were prejudiced because Davis failed to disclose the prior shoulder surgery and that non-disclosure deprived Nabors of knowledge and thus the opportunity to seek reimbursement from the second injury fund. In order to prevail in this contention, it was incumbent upon Nabors to prove that but for Davis' non-disclosure, it would have been entitled to receive reimbursement from the second injury fund.[4] In this regard, Nabors was *417 required to prove that Davis had a permanent partial disability satisfying the requirements of LSA-R.S. 23:1378(F), and that this permanent partial disability merged with the subsequent back injury to produce a greater disability. LSA-R.S. 23:1371(A) and (C).
Neither court below had difficulty concluding that Davis' preexisting shoulder condition constituted a permanent partial disability within the meaning of LSA-R.S. 23:1378(F). However, the lower courts differed in their conclusions with respect to the issue of merger. The workers' compensation judge ruled that the evidence introduced by Nabors was not sufficient to prove a merger between Davis' shoulder disability and his subsequent back injury. The court of appeal reversed, finding a sufficient merger between Davis' prior and subsequent injuries to satisfy the requirements of LSA-R.S. 23:1371(C)(2). We review the factual conclusions of the workers' compensation judge, including those relating to the sufficiency of the evidence, for manifest error. Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216, 221; Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706.
One of the key elements for establishing second injury fund reimbursement is proof that the employee suffered from a preexisting permanent partial disability. A permanent partial disability is defined in LSA-R.S. 23:1378(F) as follows:
As used in this Part, permanent partial disability means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed.
Subsection "F" of LSA-R.S. 23:1378 goes on to provide for a presumption of permanent partial disability when the disease or preexisting condition is one of thirty conditions enumerated in the statute. A rotator cuff injury is not included within *418 this list. Although not listed as one of the enumerated conditions presumptively considered to be a preexisting permanent partial disability under LSA-R.S. 23:1378(F), a medical condition may still be proved in court to be a permanent partial disability. King v. Grand Cove Nursing Home, 93-779 (La.App. 3 Cir. 3/9/94), 640 So.2d 348, 351, writ denied, 94-0865 (La.5/13/94), 641 So.2d 204.
As noted above, the lower courts had no difficulty in concluding that Davis' preexisting shoulder injury constitutes a permanent partial disability within the meaning of LSA-R.S. 23:1378(F), unaided by the statutory presumption. That conclusion is not clearly wrong, but is, in fact, amply supported by the record evidence.
The medical records of Dr. Cobb, the orthopedist who performed Davis' rotator cuff surgery, reflect that following his surgery, Davis was cautioned against returning to work on the rigs. Dr. Gidman, an orthopedist retained to complete a functional disability evaluation of Davis, opined that "[e]ven though he demonstrated the ability to work at a heavy level both isometrically and dynamically, because of the extensive nature of the surgery to his shoulder and the fact that the rotation cuff, although not torn ... did show some fraying and degeneration, [Davis] should limit his activities with the right upper extremity to medium level activity." Dr. Gidman assigned Davis a 10% impairment of the upper extremity, or a 6% impairment of the whole person.
The medical records of Dr. Cobb and Dr. Gidman are sufficient to establish the existence of a permanent partial disability. Both physicians issued reports cautioning Davis against returning to the very work he pursued with Nabors, a job that required repetitive heavy lifting. The impairment rating assigned by Dr. Gidman 10% of the upper extremity or 6% of the whole personcoupled with the restrictions against heavy lifting issued by Davis' physicians, constitute evidence of a permanent condition "of such seriousness as to constitute a hindrance or obstacle to obtaining employment" in the oilfield, or in any profession requiring heavy manual labor. Nabors thus met its burden of proving that Davis had a preexisting permanent partial disability within the meaning of LSA-R.S. 23:1378(F).
Having proved that Davis suffered from a preexisting permanent partial disability, it was nonetheless incumbent upon Nabors to also establish that Davis' permanent partial disability "merged" with his subsequent back injury "to cause a greater disability than would have resulted from the subsequent injury alone." LSA-R.S. 23:1371(A). Not every subsequent injury to a previously disabled employee will entitle an employer to seek second injury fund reimbursement. There must be a "merger" of the prior disability and subsequent injury, as that term is defined by statute.
According to LSA-R.S. 23:1371(C), the "merger" of an injury with a preexisting permanent partial disability for purposes of second injury fund reimbursement is limited to the following:
(1) The subsequent injury would not have occurred but for the preexisting permanent partial disability; or
(2) The disability resulting from the subsequent injury in conjunction with the preexisting permanent partial disability is materially and substantially greater than that which would have resulted had the preexisting permanent partial disability not been present, and the employer has been required to pay and has paid compensation for that greater disability.
*419 The use of the word "merger" in this context is somewhat of a misnomer, as the statutory definition of the term applies to situations not within the ordinary meaning of the word "merger." 13 WEX S. MALONE & H. ALSTON JOHNSON, III, LOUISIANA CIVIL LAW TREATISE: WORKERS' COMPENSATION LAW AND PRACTICE § 234 at 518 (2002).
As defined by LSA-R.S. 23:1371(C), "merger" has two components. The first, commonly known as "but for" merger ("the subsequent injury would not have occurred but for the preexisting permanent partial disability"), is not at issue in this case.[5] The second definition requires a two prong showing: (1) the disability resulting from the conjunction of the prior and subsequent injuries must be materially and substantially greater than that which would have resulted had there been no prior injury; and (2) the employer must have been required to pay and must have actually paid compensation for that greater disability. See, Fidelity & Casualty Company of New York v. State, Louisiana Worker's Compensation Second Injury Board, 94-0432 (La.App. 1 Cir. 12/22/94), 648 So.2d 1054, 1055, writ denied, 95-0554 (La.4/21/95), 653 So.2d 570.
In the instant case, Nabors attempted to meet its burden of proving statutory "merger" by introducing into evidence a series of letters between counsel for Nabors and Dr. Cobb, Davis' treating physician. In the first letter, dated May 10, 2001, counsel for Nabors requested Dr. Cobb's opinion regarding whether "as a result of having had the prior shoulder surgery Mr. Davis will have a greater disability as a result of a combination of the shoulder and the lumbar injury than he would have had solely from the lumbar injury alone." Dr. Cobb responded by letter dated June 12, 2001, as follows: "It always seems a bit confusing to me regarding the Second Injury Fund, but based on what I understand from your correspondence, if he has a greater disability resulting from a combination of the shoulder and lumbar injuries than he would have had simply from the lumbar, I would agree that this patient would meet the criteria for reimbursement from the Second Injury Fund." In a letter dated June 25, 2001, counsel for Nabors attempted to clarify Dr. Cobb's response. On July 26, 2001, Dr. Cobb responded by letter, stating: "I ... would certainly agree that he would have greater disability with the combined shoulder injury and lumbar injury."
In denying Nabors' request for forfeiture, the workers' compensation judge remarked: "While Dr. Cobb's letter establishes that there is a greater disability because there are two disabilities, it does not address any merger between the two, and I think that needs to be present. And therefore, I am denying the 1208.1 forfeiture request." On review, the court of appeal reversed, finding clear error in the workers' compensation judge's factual conclusions. Relying on Southland Corp. v. State, Workers' Compensation, Second Injury *420 Board, 593 So.2d 956 (La.App. 4 Cir. 1992), the court of appeal ruled: "[I]n the instant case, common sense indicates that Davis, who already has a 6% impairment rating to the body as a whole, is materially and substantially more disabled with the herniated disc added to his already impaired body. Further, ... Dr. Cobb stated that Davis would have a greater disability with the combined injuries. There is no contrary evidence in the record. Thus, the evidence does establish that there exists a sufficient merger between Davis' subsequent and prior injuries to satisfy the requirements of LSA-R.S. 23:1371(C)(2)." Nabors, 833 So.2d at 537.
Relying solely on the correspondence from Dr. Cobb opining that Davis has a "greater disability with the combined shoulder injury and lumbar injury," the court of appeal determined that the statutory definition of merger embodied in LSA-R.S. 23:1371(C)(2) had been satisfied. We disagree. Although not adopting the reasoning of the workers' compensation judge, we find that her determination that Nabors failed to satisfy its burden of proving "merger" within the meaning of LSA-R.S. 23:1371 is correct.
We begin our analysis, as we must, with the language of the statute at issue. Dumas v. State, Department of Culture, Recreation & Tourism, XXXX-XXXX (La.10/15/02), 828 So.2d 530, 536. Mindful of the principle that the term "merger" should be liberally construed to effectuate the purpose of the second injury fund, we cannot ignore the express language adopted by the legislature in drafting the statute. See, LSA-C.C. art. 9; 13 MALONE & JOHNSON, § 234 at 518, citing Southern Casualty Insurance Company v. Louisiana Workmen's Compensation Second Injury Board, 478 So.2d 573 (La.App. 2 Cir. 1985).
In this connection we note that under LSA-R.S. 23:1371(C)(2), a "merger" occurs not when the disability resulting from the subsequent injury in conjunction with the preexisting permanent partial is "greater" than that which would have resulted had the preexisting permanent partial disability not been present, but when the disability is "materially and substantially greater." Two adverbs, "materially" and "substantially," modify the adjective "greater." Consequently, although two disabling injuries added together will in most instances produce a "greater" disability, it is not enough under the statute simply to "add up" the employee's injuries. The statute contemplates a showing of more. Although the prior disability need not combine with the compensable injury in any special way, Southland Corp., 593 So.2d at 958, it must substantially augment the disability resulting from the compensable injury. See, 5 LARSON'S WORKERS' COMPENSATION LAW § 91.02[7] (2003).[6]
As noted above, the definition of "merger" embodied in LSA-R.S. 23:1371(C)(2) contains a second prong: a showing that "the employer has been required to pay and has paid compensation for that greater disability." In other words, in addition to establishing that the employee has sustained a "materially and *421 substantially greater disability," the statute expressly requires a showing by the employer seeking reimbursement that the benefits paid are greater in amount because of the preexisting disability. Fidelity & Casualty Company of New York, 648 So.2d at 1055. "Without the employer being required to pay and actually paying compensation for the combined, greater disability, merger is not recognized." Id. at 1056.
The fact that LSA-23:1371(C)(2) requires a two-prong showing is entirely consistent with the stated goal of the second injury fund, which is to encourage the employment of handicapped individuals by relieving the employer of the excess compensation burden that may result when that handicapped individual sustains a subsequent work-related injury. LSA-R.S. 23:1371(A). Essential to achieving this goal is a finding that the employer in fact has a greater compensation burden as a result of the employee's preexisting disability. That is accomplished by a showing under LSA-R.S. 23:1371(C)(2) that the employee has a "materially and substantially greater" disability because of the preexisting disability and (in the second prong of the "merger" test) that the employer has been required to pay, and has paid, for that greater disability.
The key, then, for demonstrating a "merger," as that term is limited and defined in LSA-R.S. 23:1371(C)(2), is a showing that the previously disabled employee who suffers a subsequent work-related injury has sustained a materially and substantially greater disability than that which would have resulted had the preexisting disability not been present, for which materially and substantially greater disability the employer will bear an increased compensation burden. This definition of "merger" excludes, for example, the situation in which the subsequent injury is of such severity that it would account for total permanent disability by itself, quite apart from any contribution by the preexisting disability. 13 MALONE & JOHNSON, § 234 at 518 (2002); 5 LARSON'S WORKERS' COMPENSATION LAW § 91.02[8]. In such a situation, the employer does not pay any more for the disability resulting from the combination of the preexisting disability and the subsequent injury than it would had the prior disability not existed. It includes, however, by way of further example, a situation such as that presented in Southern Casualty Insurance Company, supra, where an employee's back injury combined with his mental retardation to render the employee totally and permanently disabled. In that case, the court of appeal correctly reasoned:
We have little difficulty within the context of these facts in finding that the previous statutorily defined permanent partial disability, mental retardation, merged with the subsequent back injury to create a substantially greater disability. Whereas the back injury without the mental retardation, or the mental retardation without the back injury would not necessarily preclude Mr. Smith from obtaining employment, the superimposition of one disability upon the other renders Mr. Smith virtually unemployable. Such a construction of the term "merger" affects the most usual signification of the word. We therefore hold that the two injuries have "merged" within the meaning of the statute.
Southern Casualty Insurance Company, 478 So.2d at 577. See also, Willamette Industries, Inc. v. State Worker's Compensation Second Injury Bd., 595 So.2d 1206, 1209 (La.App. 3 Cir.1992), writ denied, 600 So.2d 608 (La.1992) (wherein the court of appeal concluded that an employee's ankle injury "merged" with his preexisting elbow *422 injury, reasoning: "The ankle injury without the preexisting left upper extremity disability would not have preclude[d] Rodisch from obtaining employment.... However, a combination of these injuries prevents Rodisch from participating in gainful employment."); Southland Corp., 593 So.2d at 958 (wherein the court of appeal found a merger between claimant's herniated disc and preexisting disability a single clubbed handon testimony from claimant's physician that claimant was "`more disabled with the back added to his previous problem which makes it more difficult for him to get a job, to work at some job in a meaningful way.'").
In each of these aforementioned cases, there was a showing of a materially and substantially greater disability which resulted in an increased compensation burden for the employer, i.e., a showing that the employee could have continued to work with either injury alone, but the combination of the two injuries rendered him unemployable.
While each case must be considered on its particular facts, a review of the evidence in this case reveals that no comparable showing was made by Nabors. The court of appeal based its ruling exclusively on the letter from Dr. Cobb stating: "I ... would certainly agree that [Davis] would have greater disability with the combined shoulder injury and lumbar injury." While Dr. Cobb's letter does indicate that Davis will have a "greater" disability as a result of the combined injuries, it does not establish the extent of that "greater" disability. Neither does it indicate that this "greater" disability will result in an increased compensation burden for Nabors,[7] or that Nabors will be required to pay any additional sums for the treatment of Davis' back injury as a result of his preexisting shoulder disability than it would have been required to pay had the shoulder disability not existed. See, e.g., Fidelity & Casualty Company of New York, supra, (evidence did not establish that preexisting foot disability merged with subsequent neck and back injury where physician testified that preexisting disability did not affect his treatment of claimant nor did it cause employer to incur any additional medical expenses); See also, City of Jennings v. Louisiana Workers' Compensation Second Injury Board, 96-945 (La.App. 3 Cir. 2/5/97), 689 So.2d 618, 620-621 (evidence did not establish that preexisting diabetes "merged" with subsequent back injury where although testimony indicated there was a "greater" disability, testimony also indicated that diabetes was under control and did not affect employee's treatment or recovery). Absent such evidence, the record does not demonstrate a "merger" of Davis' back injury with his preexisting shoulder disability. Therefore, contrary to the court of appeal's determination, Nabors failed to establish that it would have been entitled to second injury fund reimbursement and that Davis' failure to answer truthfully the medical history questionnaire adversely impacts its ability to receive reimbursement. Because Nabors has failed to prove each element required by LSA-R.S. 23:1208.1, forfeiture under that statute is not warranted.

CONCLUSION
The legislation is difficult to decipher. To reach a final resolution numerous interrelated *423 provisions must be evaluated. Each provision has various and sundry prongs/components/elements which in turn must be considered. Ultimately, the diligence employed in evaluating these various provisions results in the determination that an untruthful statement on a medical history questionnaire does not result in forfeiture of benefits unless the employer is prejudiced in its ability to obtain second injury fund reimbursement by virtue of a "merger" between the original and subsequent injury or unless the subsequent injury directly relates to the pre-existing injury.
Under the particular circumstances of this case, the court of appeal clearly erred in reversing the judgment of the workers' compensation judge and in ordering the forfeiture of Davis' workers' compensation benefits. The judgment of the court of appeal is therefore reversed and the judgment of the workers' compensation judge dismissing Nabors' demand seeking to terminate benefits pursuant to LSA-R.S. 23:1208.1 is hereby reinstated.
REVERSED.
NOTES
[1] We address the notice requirement of LSA-R.S. 23:1208.1 in a separate opinion issued this date, Stiner v. Antoni's Italian Café, 03-0209 (La.10/21/03), 857 So.2d 400.
[2] The "notice" and "prejudice" requirements of LSA-R.S. 23:1208.1 are to be contrasted with the requirements of the other anti-fraud statute in the Louisiana Workers' Compensation Act, LSA-R.S. 23:1208. As we discussed in detail in Resweber, supra, while both LSA-R.S. 23:1208 and 1208.1 are anti-fraud enactments aimed at curtailing abuses in the workers' compensation system, the statutes serve separate purposes and apply to different situations. LSA-R.S. 23:1208 applies to any false statement or misrepresentation, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits, and therefore generally becomes applicable at the time of an employee's accident or claim. It contains no notice or prejudice requirement. LSAR.S. 23:1208.1, on the other hand, applies to employment-related questioning of an employee or prospective employee, by an employer, concerning a prior injury, when there is no pending workers' compensation claim. The statute results in the forfeiture of a claimant's workers' compensation benefits when that claimant makes false statements concerning a prior injury. For LSA-R.S. 23:1208.1 to be enforceable, there must be notice to the employee in compliance with the statute and prejudice to the employer. Resweber, 660 So.2d 7. In enacting separate anti-fraud statutes, the legislature deliberately elected to treat the two types of falsehoods differently. That difference must be respected. Had the legislature intended that benefits terminate under LSA-R.S. 23:1208.1 based on the untruthful response alone, it could have so provided. It did not.
[3] We note, rather than refusing to work due to a prior disability, this individual, instead, made an effort to become gainfully employed. His untruthful statement arose out of an attempt to return to the work place. Ultimately, it was not his shoulder which failed him, but rather his back. There was no proof submitted to establish the prior shoulder injury caused the back injury. There was no proof submitted to establish his untruthful statement on the questionnaire was made specifically for the purpose of obtaining workers' compensation benefits.
[4] LSA-R.S. 23:1208.1 is very clear in its requirement that forfeiture occur only in cases in which the non-disclosure and/or untruthful statement results in prejudice to the employer. As indicated, for an employer to be entitled to reimbursement from the second injury fund, it must prove the existence of three elements: (1) a preexisting permanent partial disability that is serious enough to hinder employment; (2) prior actual knowledge thereof; and (3) the merger between the preexisting disability and the subsequent injury. LSA-R.S. 23:1371(A) and (C); LSA-R.S. 23:1378(A). The absence of any one of the three elements is fatal to the employer's claim. Wise. 707 So.2d at 1220. While lack of prior actual knowledge is one of the three elements that the employer must prove, the lack of prior knowledge that inevitably flows from the employee's misrepresentation and/or non-disclosure is only prejudicial to the employer's right to seek second injury fund reimbursement if the employer can prove that absent the lack of prior actual knowledge, it would have received reimbursement from the second injury fund. In other words, there is no prejudice from the lack of actual prior knowledge unless the employer can establish that the other two elements required for reimbursement (a permanent partial disability and the merger of that disability with the subsequent injury) are satisfied. Consequently, it is not enough for the employer merely to prove that the employee's untruthful statement or non-disclosure deprived him of prior actual knowledge. The employer must also prove the other two elements required for second injury fund reimbursement because it is only when these two elements are proved that the absence of the third element, prior actual knowledge, becomes consequential. Any other interpretation of the statutory scheme would render the proviso in LSA-R.S. 23:1208.1which reads: "provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund" (emphasis added)superfluous and meaningless, a result we cannot condone (since in every case involving an untruthful response to a medical history questionnaire there would always be an impact on the employer's knowledge of the pre-existing disability and no need to ever resort to the language of the proviso). See, Barrilleaux v. NPC, Inc., 98-0728 (La.App. 1 Cir. 4/1/99), 730 So.2d 1062, 1064-1065, writ denied, 99-1002 (La.5/28/99), 743 So.2d 672 ("When interpreting a law, the court should give it the meaning the lawmaker intended. It will not be presumed that the legislature intended for any part or provision of the law to be meaningless or useless. It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. The meaning of a statute is to be interpreted by looking to all the sections taken together so that no section, clause, sentence, or word becomes superfluous or meaningless.") (citations omitted).

Although we in no manner condone Davis' untruthful response on the medical history questionnaire, we note the legislature in its wisdom chose a practical as opposed to a moralistic approach. While LSA-R.S. 23:1208.1 commands truthfulness, an employee is not sanctioned with the harsh punishment of forfeiture unless the untruthful statement prejudices the employer. Untruth must be coupled with prejudice to equate to forfeiture. Unquestionably, Davis' untruthfulness would be punished, if the employer had been prejudiced. Essentially, the legislature adopted the playground basketball adage: "no harm, no foul."
As noted by Cicero, the Roman statesman and philosopher, "Our civil laws naturally cannot handle suppression of the facts in all its forms." M.T. CICERO, SELECTED WORKS 183 (Michael Grant trans., Penquin Books 1965) (1960). The law was never meant to address each untruth, every exaggeration, all puffery. Based on practical considerations and to preserve personal liberty, the law cannot dictate all moral virtues.
[5] An example of this type of merger can be found in the employee who suffers from arteriosclerosis, a permanent partial disability under LSA-R.S. 23:1378(F), and who subsequently sustains a heart attack on the job. Due to his underlying arteriosclerosis, he does not recover as would a normal worker and is in fact instructed to terminate employment because of the combination of the arteriosclerosis and the heart attack. The subsequent injury (heart attack) would probably not have occurred "but for" the preexisting permanent partial disability (arteriosclerosis). 13 MALONE JOHNSON, § 234 at 517. Another example can be fashioned from the facts of this matter. Suppose the claimant had re-injured his shoulder as opposed to injuring his back. The employer may have been able to establish "but for" the prior shoulder injury, a re-injury to the shoulder would not have occurred.
[6] As the court commented in Southern Casualty Insurance Company, 478 So.2d at 577: "We can perceive of situations where the previous injury would not combine with or merge with a subsequent injury to create a greater disability, such as is possible in the hypothesis ... of the worker with the five percent hand injury and the fifty percent back injury. If these injuries in combination do not increase the worker's disability to a materially and substantially greater degree, the statute requirements for merger have not been fulfilled. Each case must be examined in the context of its own facts to determine whether a merger of the two injuries has occurred."
[7] In fact, the record does not reveal the full extent of Davis' disability or of Nabors' resulting compensation responsibility. Dr. Cobb's records reflect only that Davis has been diagnosed with a herniated disc at the L5-S1 level, that surgery has been recommended, and that Dr. Cobb has "talked to [Davis] about the implications of him returning to the oil field, that he would have to get something lighter."