# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

\* \* \* \* \* \* \*

## 2019 CA 1101

## NATIONWIDE AGRIBUSINESS INSURANCE COMPANY

### VERSUS

## STATE OF LOUISIANA WORKER'S COMPENSATION SECOND INJURY BOARD (EMPLOYEE: DARRELL SHANKS)

JUDGMENT RENDERED: **JUN 1 8 2020**

\* \* \* \* \* \* \*

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge • State of Louisiana
Docket Number C652386 • Section 22

The Honorable Timothy E. Kelley, Judge Presiding

\* \* \* \* \* \* \*

| | |
|---|---|
| Frank R. Whiteley, III<br>Megan M. Richardson<br>Robert J. May<br>New Orleans, Louisiana | ATTORNEYS FOR APPELLEE,<br>PLAINTIFF—Nationwide<br>Agribusiness Insurance Company |
| Jeff Landry<br>Attorney General | ATTORNEYS FOR APPELLANT<br>DEFENDANT—State of Louisiana<br>Worker's Compensation Second |
| Shana Veade<br>Claudia Russ<br>Assistant Attorney Generals | Injury Board (Employee: Darrell<br>Shanks |
| Karl L. Scott<br>Darrick M. Lee<br>Meredith J. Trahant<br>Baton Rouge, Louisiana | |

\* \* \* \* \* \* \*

**BEFORE: MCCLENDON, WELCH, AND HOLDRIDGE, JJ.**

**WELCH, J.**

The defendant, the Louisiana Workers' Compensation Second Injury Board ("the Board"), appeals a summary judgment granted in favor of the plaintiff, Nationwide Agribusiness Insurance Company ("Nationwide"), which awarded Nationwide reimbursement in the amount of $231,046.26, plus legal interest from the date of judicial demand until paid, for workers' compensation benefits Nationwide paid on behalf of Darrell Shanks. Finding no error in the judgment of the district court, we affirm and issue this memorandum opinion in compliance with Uniform Rules—Courts of Appeal, Rule 2-16.1(B).

Generally, when an employee is injured while in the course and scope of employment, an employer or its insurer must pay compensation benefits to the employee pursuant to La. R.S. 23:1031, *et seq.* However, in order to encourage the employment, re-employment, or retention of employees who have a permanent, partial disability and to protect employers, group self-insurance funds, and property and casualty insurers from excess liability for workers' compensation for disabilities that may result when a subsequent injury to such an employee merges with his preexisting permanent physical disability to cause a greater disability than would have resulted from the subsequent injury alone, the legislature created the Workers' Compensation Second Injury Fund ("Second Injury Fund"). The Second Injury Fund is administered by the Board. See La. R.S. 23:1371(A); see also La. R.S. 23:1372 and 23:1377.

An employer who knowingly employs or knowingly retains in his employment an employee who suffers from a permanent partial disability, as defined by statute, is entitled to be reimbursed from the Second Injury Fund if that employee incurs a subsequent injury arising out of and in the course of his employment resulting in liability for disability due to the merger of the subsequent injury with the preexisting permanent partial disability. La. R.S. 23:1378(A);

2

**Nabors Drilling USA v. Davis**, 2003-0136 (La. 10/21/03), 857 So.2d 407, 413. In order to be reimbursed from the Second Injury Fund, an employer or insurer has the burden of proving three elements. **Nabors Drilling USA**, 857 So.2d at 416. First, the employer or insurer must prove that the employee had a preexisting permanent partial disability at the time of the subsequent injury. *Id.*; La. R.S. 23:1378(A). Second, the employer or insurer must prove that the employer had actual knowledge of the employee's preexisting permanent partial disability before the occurrence of the injury forming the basis of the compensation claim. La. R.S. 23:1378(A); **Nabors Drilling USA**, 857 So.2d at 416. Finally, the employer or insurer must prove that the permanent partial disability merged with the injury to produce a greater disability. La. R.S. 23:1371(A); La. R.S. 23:1378(A); **Nabors Drilling USA**, 857 So.2d at 416.

The underlying facts of this case are undisputed. On March 27, 2014, Darrell Shanks was involved in a vehicular accident while in the course and scope of his employment as a truck driver for Big 4 Trucking, Inc. ("Big 4"). In this accident, he injured his lower back and right hip and could not return to work in any capacity until May 9, 2014. On July 2, 2015, again while in the course and scope of his employment with Big 4, Mr. Shanks' left knee gave way as he was stepping down stairs and he ruptured his left quadriceps tendon. This injury required surgery, which was performed by Dr. Kevin Darr on December 4, 2015.

Dr. Darr subsequently referred Mr. Shanks to Dr. Chad Domangue for pain management. Mr. Shanks presented to Dr. Domangue with complaints of left knee pain relating to the July 2, 2015 accident and right hip pain relating to the March 27, 2014 accident. According to Dr. Domangue, the injury from the July 2, 2015 accident caused Mr. Shanks' prior back and hip injuries to "flare up." Dr. Domangue considered both the injuries to Mr. Shanks's lumbar spine and the injury to Mr. Shanks' left knee to be severe. When Dr. Domangue considered the

3

combined effects of the left knee injury and the lumbar injury, Dr. Domangue found Mr. Shanks was totally disabled. Both Dr. Darr and Dr. Domangue opined that Mr. Shanks' pre-existing back and hip injuries merged with his subsequent left knee injury to create a greater disability. Dr. Domangue treated Mr. Shanks through May 12, 2016, and during this time, Mr. Shanks' injuries did not improve. Mr. Shanks remained totally disabled and continued to require treatment for the combination of his low back and left knee injuries.

Approximately one month later, on June 17, 2016, pursuant to an order signed by a workers' compensation judge ("WCJ"), Nationwide paid Mr. Shanks $245,000.00 in full and final settlement of all claims arising out of Mr. Shanks' July 2, 2015 accident. Of this amount, $195,000.00 was paid in settlement of Mr. Shanks' claim for workers' compensation indemnity benefits and the remaining $50,000.00 was paid in settlement of Mr. Shanks' claim for workers' compensation medical benefits. Prior to the settlement being approved by the WCJ, Nationwide had paid Mr. Shanks $30,253.84 in workers' compensation indemnity benefits, which was at the maximum rate of $630.00 per week, and had paid $46,312.42 in workers' compensation medical benefits. Thus, Nationwide paid a total of $225,253.84 in workers' compensation indemnity benefits and a total of $96,312.42 in workers' compensation medical benefits as a result of Mr. Shanks' July 2, 2015 employment related accident.

Nationwide filed a claim with the Board seeking reimbursement from the Second Injury Fund for benefits it paid as a result of the merger of Mr. Shanks' two job related injuries. On October 7, 2016, the Board denied Nationwide's claim. Therefore, on October 25, 2016, Nationwide filed a petition in the district court seeking review of the Board's decision and the reimbursement from the Board to which it claimed it was entitled. The Board responded by generally denying the allegations of Nationwide's petition and asserting that Nationwide was

4

not entitled to reimbursement from the Second Injury Fund. Thereafter, Nationwide filed a motion for summary judgment seeking a judgment awarding it reimbursement from the Board/Second Injury Fund for the workers' compensation benefits it paid to and on behalf of Mr. Shanks. The motion was supported by documents establishing that Mr. Shanks had a pre-existing permanent partial disability from his March 27, 2014 accident with Big 4 that interfered with his ability to perform his job duties; that Big 4 had actual knowledge of Mr. Shanks' pre-existing permanent partial disability and, with that knowledge, retained him as an employee and accommodated his physical limitations; and that Mr. Shanks' July 2, 2015 job injury merged with his pre-existing permanent partial disability to create a greater disability. Nationwide also submitted supporting documentation regarding the payments it made as a result of Mr. Shanks' July 2, 2015 job-related accident. The Board did not file an opposition (or any documentation in opposition) to Nationwide's motion for summary judgment.

At the hearing on the motion for summary judgment, the Board conceded that Nationwide was entitled to reimbursement from the Second Injury Fund. However, the Board claimed that it had the right to audit the bills and payments made by Nationwide before the district court could award reimbursement. The district court rejected the Board's argument and awarded Nationwide reimbursement in the amount of $231,046.26, which represented the total sum of workers' compensation benefits that Nationwide paid, less the deductibles set forth in La. R.S. 23:1378(A). A judgment in accordance with the district court's ruling was signed on May 30, 2019, and it is from this judgment that the Board has appealed.

On appeal, the Board does not challenge whether Nationwide is entitled to reimbursement from the Second Injury Fund. Instead, it maintains that the trial court erred in: (1) awarding Nationwide reimbursement without allowing the

5

Board the right to audit Nationwide's payments; and (2) awarding Nationwide legal interest from the date of judicial demand until paid because it is statutorily protected from liability for legal interest.

For an injury occurring after July 1, 2010, a workers' compensation insurer (or employer) that qualifies for reimbursement from the Second Injury Fund, shall be reimbursed for all indemnity benefits paid "[a]fter the first 104 weeks of indemnity" and "100% of all reasonable and necessary medical expenses actually paid which exceed $25,000.00." La. R.S. 23:1378(A). As previously set forth, in support of its motion for summary judgment, Nationwide offered documents establishing that it paid a total of $225,253.84 in workers' compensation indemnity benefits (which was based on the maximum compensation rate of $630.00 per week) and a total of $96,312.42 in workers' compensation medical benefits as a result of Mr. Shanks' July 2, 2015 employment related accident. Also, as previously noted, the Board failed to introduce any documents on its behalf in opposition to the amounts established by Nationwide, or otherwise to suggest that the medical expenses Nationwide paid were not reasonable and necessary. As there is no dispute that Nationwide qualified for reimbursement from the Second Injury Fund, we find that Nationwide was entitled to be reimbursed for all workers' compensation indemnity benefits paid in excess of $65,520.00,[1] which sum is $159,733.84.[2] In addition, Nationwide was entitled to be reimbursed for all reasonable and necessary workers' compensation medical benefits exceeding $25,000.00, which is $71,312.42. Accordingly, the district court correctly determined that Nationwide was entitled to be reimbursed by the Board from the Second Injury Fund in the amount of $231,046.26.[3]

---

[1] $630.00 per week x 104 weeks = $65,520.00.
[2] $225,253.84 - $65,520.00 = $159,733.84.
[3] $159,733.84 + $71,312.42 = $231,046.26.

To the extent that the Board suggests that it should have been allowed to "audit" the medical expenses paid by Nationwide to determine whether such expenses were "reasonable and necessary" prior to the district court ordering reimbursement, we find no merit to this contention. First and foremost, the medical expenses paid by Nationwide were included in its motion for summary judgment. Nothing precluded the Board from filing an opposition challenging such expenses or from conducting such audit prior to the hearing on the motion for summary judgment. Next, we note that the district court's appellate review of the Board's decision is governed by La. R.S. 23:1378(E), which provides, in pertinent part that the "decision of the [B]oard shall be final; however, an appeal therefrom may be taken by any of the parties within thirty days after the date of the decision of the [B]oard.... The appeal shall be to the Nineteenth Judicial District Court .... All appeals in all such cases shall be tried de novo." Pursuant to this express statutory provision, the review of the Board's decision by the district court shall be by trial *de novo.* Black's Law Dictionary (11th ed. 2019) defines the term *de novo* as "Anew." Nothing in this statute limits the authority of the district court to award reimbursement or to condition any award of reimbursement upon an audit of the expenses by the Board. Indeed, when an appeal of the Board's decision is taken to the district court, the Board has already denied the claim, the case is proceeding through the court system, and the district court will be presented the information to make the determination of whether reimbursement is owed from the Second Injury Fund anew. See generally **Employers Self Insurers Fund v. Louisiana Workers' Compensation Second Injury Board**, 2009-0808 (La. App. 5th Cir. 5/25/10), 40 So.3d 1074. Herein, the Board denied Nationwide's claim for reimbursement and appealed that decision to the district court. Thus, the district court was required to determine, *de novo* or anew, the issue of Nationwide's entitlement to reimbursement and the amount of reimbursement, if any, that was

7

owed. Accordingly, we find no error in the judgment of the district court awarding Nationwide reimbursement in the amount of $231,046.26.

Next on appeal, the Board maintains that Nationwide was not entitled to legal interest on the sums awarded by the district court because it is statutorily protected from having to pay legal interest. The Board's argument in this regard is based on La. R.S. 23:1378(A)(4)(a), which provides that the "Second Injury Fund shall not be liable for reimbursement or be obligated to give credit for any amounts **paid by an employer or carrier as attorney fees, penalties, or interest**, nor for any sums paid under the Jones Act or Longshoremen and Harbor Workers Compensation Act." (Emphasis added.) However, we find the plain language of this statute means that the Second Injury Fund will not reimburse any interest, penalty, or attorney fee that an employer or insurer may have paid; it does not protect the Second Injury Fund from liability for legal interest on any judgment against the Board or Second Injury Fund for any amount that a court orders the Board pay or reimburse an employer or insurer. The judgment herein does not award Nationwide any reimbursement for any interest paid by Nationwide. Rather, it awards reimbursement for indemnity and medical benefits paid by Nationwide. As such, we find the district court properly awarded Nationwide legal interest on the amount of the judgment in its favor. See La. C.C.P. art. 1921.

For all of the above and foregoing reasons, we find no error in and affirm the May 30, 2019 judgment of the district court. All costs of this appeal in the amount of $1,053.00 are assessed against the appellant/defendant, the Louisiana Workers' Compensation Second Injury Board.

**AFFIRMED.**

8