CARTER, Judge.
12This is an appeal from a judgment, granting a request for reimbursement from the Louisiana Workers’ Compensation Second Injury Board (Board).
BACKGROUND
On February 17, 1993, claimant, Shawn LeBlanc, a quality control inspector with Iberia Threading, Inc., injured his upper back and neck while in the course and scope of his employment. As a result of the accident, LeBlanc received workers’ compensation benefits. Iberia Threading, Inc. was insured by the Louisiana Workers’ Compensation Corporation (LWCC).
LWCC sought reimbursement from the Board, alleging that before the February 17, 1993, accident, LeBlanc was permanently partially disabled and that Iberia Threading, Inc. had actual knowledge of the disability and retained LeBlanc in its employ. Le-Blanc had previously injured his upper back in an on-the-job accident while employed at Iberia Threading, Inc. in January of 1992. Earlier in December, 1990, he strained his lower back. The Board denied the claim on September 2, 1994. It determined that the employer did not establish that it had any knowledge of the employee’s preexisting permanent partial disability, if any, before the subsequent injury of February 17,1993.
LWCC applied to the district court for a trial de novo on October 3, 1994, pursuant to LSA-R.S. 23:1378 E. The parties submitted the matter on the pleadings, memoranda, and exhibits. In written reasons for judgment, the trial court stated, “[t]he court believes *124 that LeBlanc’s limitations from the January 1992 injury constitute a permanent partial disability. The court further believes that Iberia had knowledge of the disability as evidenced by their placing LeBlane in a lighter duty position. The preexisting disability was aggravated by the February 1993 second injury.” The trial court determined that LWCC was entitled to reimbursement from the Board, in accordance with the provisions of LSA-R.S. 23:1371 et seq. From this judgment, the Board appealed, assigning the following errors:
1. The trial court erred in finding that LeBlanc’s limitations from the January 1992 injury constituted a permanent partial disability.
Is2. The trial court erred in finding that Iberia Threading, Inc., had “knowledge” of the disability.
3. The trial court erred in considering a “preexisting disability was aggravated” to be an element of the Second Injury Claim.
4. The trial court erred in not considering the element of “merger.”
FACTS
Iberia Threading, Inc. hired Shawn Le-Blanc as a helper on August 30, 1990. In December of 1990, LeBlane was working as a quality control inspector, determining if pipes were the correct size as they came out of machines. The work was light physical duty, according to Robert Halphen, vice-president of finance of Iberia Threading, Inc. In December of 1990, LeBlane strained his lower back and sought medical attention for the injury. He was able to do his job after that injury, according to Halphen’s testimony.
In January of 1992, LeBlane strained his upper back while on the job. When he returned to work, he was capable of doing most of the quality control job, although he continued to complain of pain in his back. LeBlane came to Halphen and complained that he could not push and pull pipe on the job. The employer accommodated LeBlane so that he was able to perform the tasks of which he was capable, “working around the other parts,” according to Halphen. Halphen testified that LeBlane was consistently unable to perform all duties of the job for which he had been hired.
The “second injury” at issue here occurred on February 17, 1993, when LeBlane strained his upper back again and strained his neck. When he returned to work, he had some limitations when asked to do a little bit more physical activity than he felt he should have. The employer modified LeBlanc’s tasks to accommodate his injury, relieving him of the necessity to push and pull pipe. LeBlane was assigned to machines where a helper was available to push and pull pipe, so that he was responsible only for inspecting pipe.
In December of 1994, LeBlane was laid off from Iberia Threading, Inc. Business was slow, and LeBlane had been missing work. Halphen testified that LeBlane would complain that he was having pain and sometimes he would not come to work; however, “other times it was other problems.” Halphen testified that the employer was aware of |4the Second Injury Fund when it retained Le-Blanc as an employee. Therefore, it pursued recovery for compensation benefits through the Board.
LAW
LSA-R.S. 23:1371 sets forth the purpose of the Louisiana Workers’ Compensation Second Injury Board. Its premise is that it is desirable social policy to encourage employers to hire or, as in this case, retain employees who have a preexisting permanent partial disability. By reimbursing employers or their insurers for the greater liability which ensues when such a worker is injured a second time, the Board promotes that social policy. Employers National Insurance Company v. Louisiana Workers' Compensation Second Injury Board, 532 So.2d 535, 536 (La.App. 1st Cir.1988).
One of the key elements for the determination that the Board is liable to an employer or insurer is a preexisting permanent partial disability. The party seeking to prove a right to recovery must first prove that the employer knowingly employs or retains an employee who has a permanent par *125 tial disability. LSA-R.S. 23:1378 A. Permanent partial disability in this context means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment, if the employee should become unemployed. LSA-R.S. 23:1378 F. Where the employer shows he had knowledge of the preexisting disability prior to the subsequent injury, a presumption exists that the employer considered the conditions listed in LSA-R.S. 23:1378 F to be permanent. Once the preexisting permanent partial disability is established, the employer must prove a merger between the disability and the subsequent injury.
LSA-R.S. 23:1371 C(2) provides that a “merger” occurs when a new condition combines with a previous condition to create a “materially greater” disability than that which would have resulted had the preexisting permanent partial disability not been present. American General Fire and Casualty Company v. Louisiana Worker's Compensation Second Injury Board, 604 So.2d 46, 48 (La.App. 1st Cir.), writ denied, 608 So.2d 176 (La.1992); Crown Zellerbach Corporation v. Louisiana Workmen's Compensation Second Injury Board, 481 So.2d 650, 652 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1021 (La.1986).
In the instant case, the question of the employer’s knowledge of the employee’s permanent partial disability required for reimbursement under LSA-R.S. 23:1378 A, is not an issue. Halphen testified for Iberia Threading, Inc. that the company intentionally retained LeBlanc with knowledge of his previous injury and of the potential for reimbursement from the Board for compensation payments made as a result of a second injury. The issues to be determined by us are whether LeBlanc was permanently partially disabled before the February 17, 1993, injury, and if so, whether that preexisting disability merged with the subsequent injury.
The parties submitted the deposition of Dr. John E. Cobb, an orthopedic surgeon in Lafayette, Louisiana, to the trial court. Dr. Cobb first examined LeBlanc on May 3,1993. At that time LeBlanc complained of neck pain subsequent to the February 17, 1993 accident. LeBlanc had been treated twice before for neck injuries by his family doctor. At the time of the initial evaluation, LeBlanc had pain, some feeling of erepitance in his neck, slight elevation of his right shoulder, and slight spasms in the shoulder. The neurological examination and X-rays were both normal. Dr. Cobb ordered an MRI, which was performed on May 25, 1993. It did not reveal any disc herniations. However, it demonstrated spondylosis at the sixth and seventh levels of the cervical area of the spine on the right side.
Dr. Cobb testified that spondylosis is the x-ray evidence of degeneration of the spine. It usually causes enlargement of the bones, some sclerosis, occasionally spur formation and narrowing of the spinal canal, and is a permanent condition. Generally, spondylosis would not be caused by trauma. However, in the case of LeBlanc, who was twenty-seven years old at the time of the February 17, 1993, injury, it probably would be related to trauma, either cumulative or a specific traumatic event, plus an aggravation of the spine subsequent to the trauma.
Dr. Cobb saw LeBlanc on June 2, July 7, and September 22, 1993. LeBlanc continued to complain of neck pain and headaches. Dr. Cobb referred LeBlanc to Dr. Robert D. Franklin, a physical medicine and rehabilitation specialist. Dr. Franklin saw |6LeBlanc on July 21, 1993 through August 31, 1993. He released him to sedentary duty on a trial basis.
Dr. Cobb testified that no surgery was indicated for LeBlanc and that his final diagnosis was cervical spondylosis. The spondy-losis was aggravated by the neck injury, which perhaps also created myofascial pain syndrome. Dr. Cobb testified that the spon-dylosis could be caused by the previous two incidents of trauma to his neck, “which conceivably could have injured the disc and this has led to the spondylosis at that one (1) level.” Dr. Cobb testified that the physical disability was not severe, but that LeBlanc’s disability was caused by the pain. If the pain could be resolved, LeBlanc could return to work “at least medium, and perhaps something a little heavier if he can have the *126 appropriate modifications and flexibility necessary to control the pain that may be associated with the spondylosis.” He testified Le-Blanc was at risk of aggravating his neck if he worked at a job “that may tend to overload the neck area.”
Anatomically, he perceived no change from the February 17, 1993, accident which would add physical impairment. LeBlanc’s disability was “more of a pain issue.” With the third injury, he was more disabled than previously “because he is more susceptible and more vulnerable to more pain.” The February 17 accident contributed to his disability in a sense of increasing the pain. Dr. Cobb testified, however, that if LeBlanc had continuous complaints of pain before the February 17 accident but was able to work at the job “satisfactorily” then he was not disabled.
The Board argues that the employer could not have knowledge of the preexisting cervical spondylosis diagnosed by Dr. Cobb because the diagnosis was not made until three months after the February 17,1993, accident. However, it is clear from the record that, although no label had yet been attached to LeBlanc’s medical problems, the employer was well aware of his back injuries and had accommodated LeBlanc by assigning him lighter duty work than he had been performing previously.
The Board further argues that Le-Blanc’s cervical spondylosis was not a “permanent partial disability” under LSA-R.S. 23:1378 F because it did not constitute a hindrance or obstacle to employment. We note first that even though cervical spondylo-sis is not listed as one of the enumerated conditions presumptively considered 17to be a preexisting permanent partial disability under LSA-R.S. 23:1378 F, a medical condition not listed in the statute may still be proven in court to be a permanent partial disability. King v. Grand Cove Nursing Home, 93-779, p. 3 (La.App. 3rd Cir. 3/9/94); 640 So.2d 348, 350-51, writ denied, 94-0865 (La.5/13/94); 641 So.2d 204.
We agree with the trial court that LWCC proved that LeBlanc’s cervical spon-dylosis was a preexisting permanent partial disability. His complaints of pain were consistent and required the employer to accommodate him by placing him at machines where helpers were available to push and pull pipe. Dr. Cobb testified that the disability consisted of pain, primarily, and that the pain required LeBlanc to restrict his activities. LeBlanc could still pull pipe, Dr. Cobb testified, but it would tend to aggravate his condition, causing him to have increased neck pain.
The Board points out that Dr. Cobb testified that LeBlanc was not disabled if he could continue to work at his job satisfactorily before the February 17, 1993, accident. However, Halphen testified that LeBlanc could not perform the tasks required of a quality control inspector without help from the employer after the 1992 injuries, because of his continuing complaints of pain. Therefore, LeBlanc was not working at his job as a quality control inspector satisfactorily before the February 17, 1993, accident. The Board argues that LeBlanc could still work at his job because of Iberia Threading, Inc.’s willingness to accommodate him. However, we do not believe that the employer’s accommodations to LeBlanc negate the fact that he was permanently partially disabled from performing his job. The Board presented no medical evidence rebutting LWCC’s proof that LeBlanc’s cervical spondylosis was a preexisting permanent partial disability.
We have no difficulty finding that a merger occurred between the preexisting permanent partial disability and the subsequent injury. The Board’s primary argument is that there was no preexisting permanent partial disability proven by LWCC, and, therefore, there could be no merger. We have previously addressed this argument and found it has no merit. The Board further argues, though, that even if a preexisting permanent partial disability existed, the employer was not required to pay for “greater disability” under LSA-R.S. 23:1371 C(2) because LeBlanc could have worked at his job with the employer’s accommodations. Even if a preexisting permanent partial disability Igexisted, the Board argues, it was not cervical spondylosis but a cervical strain, which Dr. Cobb testified would have resolved.
*127 This argument has no merit. Dr. Cobb diagnosed cervical spondylosis, although there was some medical history indicating a cervical strain or soft tissue injury. Dr. Cobb testified that, even if the basis of Le-Blanc’s pain was a soft tissue condition rather than cervical spondylosis, “with that ongoing and now he’s got another injury that seems to increase his symptoms, he would be more disabled from the second injury because of the underlying condition and the new injury.”
The Board cites American General Fire and Casualty Company, 604 So.2d at 46, as authority for its position. That case involved a claimant who was previously injured on the job and suffered from back problems. She returned to work with no restrictions, but subsequently injured her back in a fall at work and stopped working thereafter. We found that the employer failed to establish the merger of a preexisting permanent partial disability with a second injury, resulting in a materially greater disability.
The facts of American General are clearly distinguishable from the instant case. Here, LeBlanc continued working after his neck and back injuries with marked restrictions. The employer was obligated to provide assistance in order for LeBlanc to perform his normal job duties. The claimant in American General, however, admitted that she returned to work as a bank teller after her first injury with no medical restrictions on her activities.
We find no manifest error in the factual findings of the trial court and affirm its judgment for the foregoing reasons. Costs of this appeal, in the amount of $469.66, are to be borne by defendant, Louisiana Workers’ Compensation Second Injury Board.
AFFIRMED.