5 So.3d 211 (2008)
LOUISIANA WORKERS' COMPENSATION CORPORATION
v.
LOUISIANA WORKERS' COMPENSATION SECOND INJURY BOARD.
No. 2008 CA 1276.
Court of Appeal of Louisiana, First Circuit.
December 23, 2008.
*212 Terrel A. Thomas, Baton Rouge, LA, for Plaintiff-Appellant, Louisiana Workers' Compensation Corp.
James D. "Buddy" Caldwell, Attorney General, Ingrid F. Johnson, Asst. Attorney General, Baton Rouge, LA, for Defendant-Appellee, Louisiana Workers' Compensation Second Injury Board.
Before PARRO, McCLENDON, and WELCH, JJ.
WELCH, J.
The plaintiff, Louisiana Workers' Compensation Corporation ("LWCC") appeals the judgment of the district court granting a motion for summary judgment filed by the defendant, Louisiana Workers' Compensation Second Injury Board ("the Board"), and dismissing LWCC's claim for reimbursement of workers' compensation benefits paid. For the following reasons, we affirm the judgment of the district court.

I. FACTUAL AND PROCEDURAL HISTORY
In February 2001, Southwest Oilfield Services, Inc. ("Southwest") hired Norwood Hollier as an oilfield technician. In *213 1992, approximately nine years prior to his employment with Southwest, Mr. Hollier had been injured in a work-related accident. As a result of that accident, Mr. Hollier underwent surgery on his lower back. During Mr. Hollier's employment interview with Southwest, Mr. Hollier disclosed his previous back surgery.
On July 29, 2001, Mr. Hollier was involved in an automobile accident while in the course and scope of his employment with Southwest. LWCC issued a policy of insurance providing workers' compensation coverage to Southwest that was in effect at the time of the accident, and therefore, LWCC commenced paying workers' compensation benefits to Mr. Hollier. During the investigation of Mr. Hollier's claim, LWCC learned about Mr. Hollier's previous injury and back surgery. LWCC also learned that Mr. Hollier had disclosed this information during his employment interview with Southwest.
Upon discovery of this information, LWCC filed a notice of claim for reimbursement with the Board requesting reimbursement from the Workers' Compensation Second Injury Fund ("the Second Injury Fund") for payments it made.[1] On July 10, 2003, the Board denied the claim. Therefore, on August 7, 2003, LWCC filed a petition to appeal the Board's denial of the claim in district court.[2] Thereafter, the Board filed a motion for summary judgment seeking the dismissal of LWCC's claim. By a judgment signed on November 5, 2007, the district court granted summary judgment in favor of the Board and dismissed LWCC's claim for reimbursement. From this judgment, LWCC has appealed.

II. LAW AND DISCUSSION

A. Summary Judgment
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Granda v. State Farm Mutual Insurance Company, 2004-2012, p. 4 (La.App. 1st Cir.2/10/06), 935 So.2d 698, 701. Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the district court's determination of whether summary judgment is appropriate. Id. Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
On a motion for summary judgment, the initial burden of proof is on the moving party. However, if the moving party will not bear the burden of proof at trial on the matter before the court, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the non-moving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial. Failure to do so shows that there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2). Once the motion for summary judgment has been properly supported by the moving *214 party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Babin v. Winn-Dixie Louisiana, Inc., XXXX-XXXX, p. 4 (La.6/30/00), 764 So.2d 37, 40; see also La. C.C.P. art. 967(B).

B. Entitlement to Reimbursement from the Second Injury Fund
The motion for summary judgment arose in the appeal by LWCC from the Board's denial of a claim for reimbursement from the Second Injury Fund for workers' compensation benefits paid. Generally, when an employee is injured while in the course and scope of employment, an employer or its insurer must pay compensation benefits to the employee pursuant to La. R.S. 23:1031, et seq. However, in order "to encourage the employment of physically handicapped employees who have a permanent, partial disability by protecting employers ... and casualty insurers from excess liability for workers' compensation for disability [which may result] when a subsequent injury to such an employee merges with his preexisting permanent physical disability to cause a greater disability than would have resulted from the subsequent injury alone," the legislature created the Second Injury Fund. La. R.S. 23:1371(A); see also La. R.S. 23:1377.
An employer who "knowingly employs or knowingly retains in his employment" an employee who suffers from a permanent partial disability, as defined by statute, is entitled to be reimbursed from the Second Injury Fund if that employee "incurs a subsequent injury arising out of and in the course of his employment resulting in liability for disability due to the merger of the subsequent injury with the preexisting permanent partial disability."[3]See La. R.S. 23:1378(A)(1); Nabors Drilling USA v. Davis, XXXX-XXXX, p. 5 (La.10/21/03), 857 So.2d 407, 413.
The employer's or insurer's right to reimbursement from the Second Injury Fund is not automatic. Nabors Drilling USA, XXXX-XXXX at p. 8, 857 So.2d at 416. The employer is not entitled to reimbursement from the Second Injury Fund merely because an employee with a preexisting disability is subsequently injured. Id. In order to be reimbursed from the Second Injury Fund, an employer or insurer has the burden of proving three elements. Id. First, the employer or insurer must prove that the employee had a preexisting permanent partial disability at the time of the subsequent injury. Id.; La. R.S. 23:1378(A). A permanent partial disability is "any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed." La. R.S. 23:1378(F),[4] However, La. R.S. 23:1378(F) further provides for a presumption of permanent partial disability when the condition *215 is one of thirty enumerated conditions of which the employer had knowledge of prior to the subsequent injury. One of the enumerated conditions is "[a] spinal fusion or the surgical removal of an intervertebral disc." La. R.S. 23:1378(F)(29).
Second, the employer or insurer must prove that the employer had actual knowledge of the employee's preexisting permanent partial disability before the occurrence of the injury forming the basis of the compensation claim. La. R.S. 23:1378(A)(4); Nabors Drilling USA, XXXX-XXXX at p. 8, 857 So.2d at 416. To satisfy this element, the employer or insurer must prove either that the employer knowingly hired a worker with a permanent partial disability or that he acquired actual knowledge of the permanent partial disability during the worker's employment but prior to the subsequent injury and that he retained the employee notwithstanding knowledge of the permanent partial disability. See La. R.S. 23:1378(A).
Finally, the employer or insurer must prove that the permanent partial disability merged with the injury to produce a greater disability. La. R.S. 23:1371(A); La. R.S. 23:1378(A); Nabors Drilling USA, XXXX-XXXX at p. 9, 857 So.2d at 416. This last element requires proof that the subsequent injury would not have occurred but for the preexisting permanent partial disability or that the disability resulting from the subsequent injury in conjunction with the preexisting permanent partial disability is materially and substantially greater than that which would have resulted had the preexisting permanent partial disability not been present. La. R.S. 23:1371(C).

C. Discussion of the Record
In this case, the Board filed the motion for summary judgment. As the mover, the Board had the initial burden of proof for purposes of seeking summary judgment pursuant to La. C.C.P. art. 966(C)(2). However, because LWCC bore the burden of proving at trial that it was entitled to reimbursement from the Second Injury Fund, the Board's burden on the motion for summary judgment was to point out that there was an absence of factual support for one or more elements essential to LWCC's claim. In this regard, the Board contended that there was an absence of factual support to establish (1) that Mr. Hollier had a preexisting permanent partial disability as defined by La. R.S. 23:1378(F) at the time of his subsequent injury on July 29, 2001, and (2) that Southwest had actual knowledge of Mr. Hollier's preexisting permanent partial disability, if any, prior to Mr. Hollier's subsequent injury of July 29, 2001, as required by La. R.S. 23:1378(A)(4).
In support of its motion for summary judgment, the Board offered the deposition testimony of Mr. Hollier and the deposition testimony of Dr. Michael Heard. Mr. Hollier testified in his deposition that he was in good health when he started working for Southwest and that he did not suffer from any conditions or physical illnesses prior to his employment at Southwest. Mr. Hollier also testified that he told Ronnie Cockerham, the person who interviewed and hired him for Southwest, that he had "a previous back surgery," but that he was "healed," and "everything was all right." Mr. Hollier characterized his previous back surgery as a "partial laminectomy." Mr. Hollier further testified that he was not under any doctor's restrictions when he started working for Southwest and that after his back surgery in 1992, his only restrictions were that he was not supposed to jump or "to overdo it" until his body was stronger. Mr. Hollier explained that he did not believe those restrictions to be permanent, but he did become cautious in his movements.
*216 Mr. Hollier further testified that when he was hired at Southwest, he was directed not to lift anything over fifty pounds, but instead, to use a forklift or ask for help. However, Mr. Hollier also explained that all of the employees used a forklift to lift heavy items and that the use of a forklift by employees was not a restriction directed specifically at him. Mr. Hollier also testified that before he started working at Southwest, he was neither required to take a pre-employment physical nor asked to complete a physical questionnaire. Mr. Hollier testified that he did not have any difficulties performing his job and that he did not have any condition or injury that he thought presented a hindrance or obstacle to him performing his job.
According to the deposition testimony of Dr. Heard, an orthopedic surgeon, he saw Mr. Hollier for problems he was experiencing in his neck, his lower back, and his left knee and for headaches following his injury in the motor vehicle accident on July 29, 2001. Dr. Heard considered the work Mr. Hollier was performing at Southwest as an oilfield technician to be "medium, heavy, or very heavy type of work." Dr. Heard testified that Mr. Hollier disclosed to him his previous lower back injury and surgery, but Dr. Heard was not aware of any restrictions that Mr. Hollier would have been under prior to the July 29, 2001 accident. Dr. Heard's impression of Mr. Hollier was that he was suffering from lower back pain with radiculitis, status post laminectomy and diskectomy with recurrent disc herniation. Dr. Heard further explained that during Mr. Hollier's diskectomy in 1994, his "disc [was] not completely removed."
In opposition to the motion for summary judgment filed by the Board, LWCC offered no evidence. Instead, LWCC asserted that it was entitled to a presumption that Mr. Hollier's prior back surgery constituted a preexisting permanent partial disability since "[a] spinal fusion or the surgical removal of an intervertebral disc" is a condition enumerated in La. R.S. 23:1378(F)(29) and since Dr. Heard identified Mr. Hollier's prior back surgery as a laminectomy and diskectomy. Furthermore, LWCC claims that even if Mr. Hollier's prior back surgery is not presumptively considered a preexisting permanent partial disability, the deposition testimony of both Mr. Hollier and Dr. Heard establishes that Mr. Hollier's prior back surgery constituted a preexisting permanent partial disability that created a hindrance or obstacle to his employment. LWCC also asserts that Southwest had actual knowledge of Mr. Hollier's preexisting permanent partial disability before the July 29, 2001 accident, because Mr. Hollier disclosed his previous back surgery during his employment interview with Mr. Cockerham and since Mr. Hollier was instructed during this interview not to lift anything over fifty pounds.
At the outset, we find that the presumption of a preexisting permanent partial disability found in La. R.S. 23:1378(F) does not apply. Mr. Hollier stated that his prior back surgery was a "partial laminectomy" while Dr. Heard identified his status as post laminectomy and diskectomy. A laminectomy is the "excision of the posterior arch of a vertebra." Dorlands Illustrated Medical Dictionary (25th Edition), 834. A diskectomy is the "excision of an intervertebral disc." Dorlands Illustrated Medical Dictionary (25th Edition), 465. Thus, a diskectomy may be a condition invoking the presumption set forth in La. R.S. 23:1378(F)(29), because it is "the surgical removal of an intervertebral disc." Notably, however, Dr. Heard explained in his deposition that only a part of Mr. Hollier's disc was removed. The surgical removal of part of an intervertebral disc is not the equivalent of "the surgical removal *217 of an intervertebral disc" under La. R.S. 23:1378(F)(29). Thus, while a diskectomy may qualify as a condition invoking the presumption set forth in La. R.S. 23:1378(F)(29), a partial diskectomy does not. Had the legislature intended that the surgical removal of part of a disc be included among the enumerated conditions that qualify for the presumption of a permanent partial disability, it would have included the appropriate language to express that intent in La. R.S. 23:1378(F)(29).
Moreover, in order to qualify for the presumption of permanent partial disability when the condition is one of the enumerated conditions set forth in La. R.S. 23:1378(F), it must also be established that the employer had knowledge of that condition prior to the subsequent injury. Because we find, for reasons detailed below, that there is an absence of factual support establishing that Southwest had knowledge of Mr. Hollier's partial diskectomy or of a permanent partial disability prior to Mr. Hollier's subsequent injury on July 29, 2001, the presumption of a preexisting permanent partial disability found in La. R.S. 23:1378(F) is not applicable to this case.
Nonetheless, a medical condition not listed in La. R.S. 23:1378(F) may still be proven to be a permanent partial disability unaided by a presumption of permanent disability. Louisiana Workers' Compensation Corporation v. Louisiana Workers' Compensation Second Injury Board, 96-0808, pp. 6-7 (La.App. 1st Cir.2/14/97), 691 So.2d 122, 126. In order to do so, LWCC had the burden of proving that Mr. Hollier had a permanent condition of such seriousness as to constitute a hindrance or obstacle to his obtaining employment or to obtaining reemployment should he become unemployed. With regard to this issue, we find that the Board successfully pointed out that there was an absence of factual support for this essential element of LWCC's claim. The deposition testimony of Mr. Hollier establishes that while Mr. Hollier did have a previous back injury and surgery, his condition nine years later was not of such seriousness that it hindered his employment or his ability to obtain employment. Mr. Hollier told Southwest that he was in good health at the time he was hired and that he was healed from his surgery. Mr. Hollier was able to perform the duties that he was hired by Southwest to do, including lifting objects up to fifty pounds, without any hindrances or obstacles and without Southwest modifying Mr. Hollier's position or job duties in order to accommodate him.
The Board, having met its burden of proving that there was an absence of factual support establishing that Mr. Hollier had a preexisting permanent partial disability as defined by La. R.S. 23:1378(F) at the time of his second injury on July 29, 2001, LWCC was required to produce factual support sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial. We find LWCC failed to offer any evidence establishing a genuine issue of material fact for trial on this essential element of its claim.
We also find that the Board met its burden of proving that there was an absence of factual support establishing that Southwest had actual knowledge of Mr. Hollier's permanent partial disability, if any, before the July 29, 2001 accident. Mr. Hollier's deposition testimony established that he told Southwest, during his employment interview, that he "had a previous back surgery," that he "was healed from it," and that "everything was all right." These statements establish that Southwest had knowledge of a previous back surgeryit does not establish that Southwest had actual knowledge that Mr. *218 Hollier underwent a surgical removal of part of an intervertebral disk or otherwise had a condition of such seriousness as to constitute a hindrance or obstacle to his employment or obtaining employment. Because LWCC failed to offer any evidence establishing that Southwest had actual knowledge of Mr. Hollier's purported permanent partial disability before the July 29, 2001 accident, there is no genuine issue of material fact for trial on this essential element of its claim, and the district court correctly granted summary judgment. The November 5, 2007 judgment of the district court, granting the motion for summary judgment filed by the Board and dismissing LWCC's claim, is hereby affirmed.

III. CONCLUSION
After a de novo review of the record, we conclude that the Board met its burden of pointing out that there was an absence of factual support for two essential elements of LWCC's claim for reimbursement, i.e., that Mr. Hollier had a preexisting permanent partial disability as defined by La. R.S. 23:1378(F) at the time of his subsequent injury on July 29, 2001, and that Southwest had actual knowledge of Mr. Hollier's purported preexisting permanent partial disability prior to Mr. Hollier's subsequent injury of July 29, 2001, as required by La. R.S. 23:1378(A)(4). Because LWCC failed to produce factual support sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial as to those two essential elements, there was no genuine issue of material fact and summary judgment dismissing LWCC's claim was proper. Therefore, the November 5, 2007 judgment of the district court is hereby affirmed.
All costs of this appeal are assessed against the plaintiff/appellant, Louisiana Workers' Compensation Corporation.
AFFIRMED.
PARRO, J., concurs.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurs and assigns reasons.
I respectfully concur in the result, finding it unnecessary to address whether the presumption under LSA-R.S. 23:1378 F(29) applies in this case.
NOTES
[1] The Board is a legislatively created entity that administers the Second Injury Fund. See La. R.S. 23:1372 and La. R.S. 23:1377.
[2] See La. R.S. 23:1378(E) (providing that although the decision of the Board is final, any party may appeal the Board's decision to the Nineteenth Judicial District Court, Parish of East Baton Rouge, within thirty days after the date of the decision by the Board).
[3] The provisions of La. R.S. 23:1378(A) have since been amended by 2004 La. Acts, No. 258, § 1; 2004 La. Acts, No. 293, § 1; 2005 La. Acts, No. 257, § 1; 2006 La. Acts, No. 453, § 1; 2007 La. Acts, No. 332, § 1; and 2008 La. Acts, No. 220, § 8. However, since all of the pertinent events in this case occurred prior to the 2004, 2005, 2006, 2007, and 2008 amendments, the version of La. R.S. 23:1378(A) that was in effect prior to those amendments is applicable to this case.
[4] The provisions of La. R.S. 23:1378(F) have since been amended by 2006 La. Acts, No. 453, § 1 and 2008 La. Acts, No. 220, § 8. However, since all of the pertinent events in this case occurred prior to the 2006 and 2008 amendments, the version of La. R.S. 23:1378(F) that was in effect prior to those amendments is applicable to this case.