McClendon, j.
I /The Louisiana Workers’ Compensation Second Injury Board (the Board) seeks review of the district court’s judgment granting a workers’ compensation carrier’s motion for summary judgment and finding that all required elements for reimbursement under the Second Injury Fund have been met. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On April 2, 2001, Jamesell Williams was injured in the course and scope of his employment with Ruskin MFG. Mr. Williams sustained a torn rotator cuff in his left shoulder and impingement syndrome.
On June 26, 2001, Mr. Williams suffered a second on-the-job injury at Ruskin MFG. In the second incident, Mr. Williams aggravated his pre-existing rotator cuff tear and impingement syndrome. On January 23, 2002, Mr. Williams had surgery on his left shoulder.
Ruskin MFG accepted the compensability of Mr. Williams’ claim and, through its workers’ compensation carrier National Union Fire Insurance Company (National Union), paid workers’ compensation benefits related to the injuries Williams sustained while in the course and scope of his employment with Ruskin MFG.
National Union filed a claim with the Board seeking reimbursement from the Workers’ Compensation Second Injury Fund. On August 2, 2002, the Board de *587 nied National Union’s claim.[1] On September 9, 2002, National Union, in accordance with LSA-R.S. 23:1378E, filed a petition for judicial review in the district court.
On May 2, 2013, National Union filed a motion for summary judgment, asserting that no genuine issues of material fact were in dispute and that it was entitled to reimbursement from the Second Injury Fund. In support of its | amotion, National Union submitted, among other things, Mr. Williams’ deposition and the affidavit of Dr. John J. Ferrell, Mr. Williams’ orthopedic surgeon.[2] The Second Injury Board opposed the motion, contending that National Union did not meet its burden of proof to show that it was entitled to reimbursement by the Second Injury Fund.
Following argument, the district court granted National Union’s motion for summary judgment, concluding that “all required elements for reimbursement from the Second Injury Board have been met.” The Board has appealed to seek review of the district court’s judgment, assigning five errors for review.
DISCUSSION
| ¿Summary Judgment
Summary judgment is subject to de novo review on appeal, using the same standards applicable to the trial court’s determination of the issues. Berard v. L-3 Communications Vertex Aerospace, LLC, 09-1202 (La.App. 1 Cir. 2/12/10), 35 *588 So.3d 334, 339-340, writ denied, 10-0715 (La.6/4/10), 38 So.3d 302. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits admitted for the purpose of summary judgment show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966B.
On a motion for summary judgment, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover bears the burden of proof at trial and has made a prima, facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. See Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002, 1006.
In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764,765. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material, for purposes of summary judgment, can be seen only in the light of the substantive law applicable to the ease. Gaspard v. Graves, 05-1042 (La.App. 1 Cir. 3/29/06), 934 So.2d 158, 160, writs denied, 06-0882 and 06-0958 (La.6/16/06), 929 So.2d 1286,1289.

The Second Injury Fund

The Second Injury Fund (“the Fund”) was established in accordance with LSA-R.S. 23:1371, et seq. to encourage the employment, re-employment, or retention of employees with preexisting partial disabilities. The Fund, which is | ^funded through assessments from insurers and self-insured employers, protects employers from excess liability for compensation and medical expenses by reimbursing employers for additional benefits paid due to an employee’s subsequent injury. The Fund is administered by the Second Injury Board. See LSA-R.S. 23:1371, 23:1372 and 23:1377.
The right to reimbursement by the Fund is not automatic. Nabors Drilling USA v. Davis, 03-0136 (La.10/21/03), 857 So.2d 407, 416. To recoup benefits under the Fund, the employer bears the burden of proving the following three elements: (1) that the employee had a permanent partial disability at the time of the subsequent injury; (2) that the employer had actual knowledge of the employee’s partial permanent disability before the occurrence of the second injury forming the basis of compensation claim; and (3) that the permanent partial disability merged with the subsequent injury to produce a greater disability. See LSA-R.S. 23:1371(A) and LSA-R.S. 23:1378(A); see also Wise v. J.E. Merit Constructors, Inc., 97-0684 (La.1/21/98), 707 So.2d 1214, 1220.

Assignments of Error

In its first assignment of error, the Board asserts that National Union has not established that Mr. Williams suffered from a preexisting permanent partial disability prior to his second injury.
Louisiana Revised Statutes 23:1371.1(3) defines “Permanent partial disability” as “any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment, to retention by an employer/or to obtaining re-employment, if the employee becomes unemployed.” Section *589 1378F provides a list of thirty-four (34) conditions presumed to be preexisting permanent partial disabilities. If the employee suffers from any medical condition on the list, that preexisting condition is presumed “to be permanent and to be of likely to be a hindrance or obstacle to employment.” LSA-R.S. 23:1378(F). A medical condition not enumerated in Section 1378F may still be proven to be a preexisting permanent partial disability. Louisiana Workers’ Compensation Corp. v. Louisiana Workers’ Compensation Second Injury Bd., 96-0808 (La.App. 1 Cir. 2/14/97), 691 So.2d 122, 126. To do so, the employer has the burden of proving that the employee had a permanent condition of such seriousness as to constitute a hindrance or obstacle to his obtaining employment, to retention by an employer, or to obtaining re-employment should he become unemployed. See Louisiana Workers’ Compensation Corp. v. Louisiana Workers’ Compensation Second Injury Bd., 08-1276 (La.App. 1 Cir. 12/23/08), 5 So.3d 211, 217.
The Board notes that Mr. Williams’ injury is not one enumerated in subsection F; therefore, National Union is not entitled to a presumption that Mr. Williams’ injury was a permanent partial disability. Because no presumption attaches, the Board contends that the National Union was required to establish a prima facie case to show that Mr. Williams’ condition was of such seriousness as to constitute a hindrance or obstacle to retaining his employment with Ruskin MFG. The Board asserts that National Union has failed to do so. The Board avers that for a preexisting condition to be a permanent condition of such seriousness to be considered a hindrance or obstacle to retaining employment, our courts generally consider whether accommodations or modifications were made for the employee as a result of the preexisting medical condition. See Louisiana Workers’ Compensation Corp., 691 So.2d at 126, wherein the court, in determining that the employee sustained a preexisting permanent partial disability, considered as a factor the accommodations made by the employer.[3] The Board contends that National Union did not provide any records to reflect that Mr. Williams needed employment accommodations nor did it introduce any medical records to show that Mr. Williams was permanently restricted by a physician from performing his occupational duties. As such, the Board concludes |7that National Union did not meet its initial burden of proof on summary judgment.
We disagree. Despite the Board’s contention, the evidence introduced in support of National Union’s motion for summary judgment reflects that Ruskin MFG did make accommodations when Mr. Williams returned to work following the initial work-related incident. Specifically, Mr. Williams testified that prior to his first incident, he worked as a saw operator, which was considered “heavy work.” However, Mr. Williams testified that following the incident, because he continued to experience shoulder pain, Ruskin MFG placed him on light duty work making screens for louvers. Although at some *590 point prior to his second injury, Mr. Williams returned to his job as a saw operator, he testified that when he returned to his position as a saw operator, he continued to experience pain in his shoulder. Further, Dr. John J. Ferrell, a board certified orthopedic surgeon who has treated Mr. Williams since 2007, attested that the “rotator cuff tear sustained as a result of the [first] work accident of April 2, 2001 constituted a permanent partial disability in that it limited the function and strength of Jamesell Williams’ left upper extremity and resulted in restrictions on his ability to perform work as a saw operator.” Accordingly, National Union made a prima facie showing that Mr. Williams suffered a permanent partial disability following his first work-related incident. The Board did not present any evidence in opposition to National Union’s motion for summary judgment in this regard. Accordingly, we find assignment of error number one to be without merit.
In its second and third assignments of error, the Board contends that National Union failed to establish that the employer had actual knowledge of the employee’s preexisting permanent partial disability prior to the subsequent injury.
Louisiana Revised Statutes 23:1378(A), which was in effect at the time Mr. Williams was injured, states in pertinent part:
(4) No employer or insurer shall be entitled to reimbursement unless it is clearly established that the employer had actual | ^knowledge of the employee’s preexisting permanent partial disability prior to the subsequent injury[4]
The Board contends that National Union has not produced one scintilla of evidence showing that the employer had actual knowledge of Mr. Williams’ preexisting medical condition as required by the statute.
The purpose of the knowledge requirement is consistent with the stated purpose of the Fund to; encourage the employment of physically handicapped employees who have a permanent partial disability. See Commerical Union Ins. Co. v. State, Worker’s Compensation Second Injury Bd., 94-1202 (La.App. 3 Cir. 3/1/95), 651 So.2d 933, 938. The goal of promoting the employment of disabled persons can only be attained if an employer actually knows that a job applicant or a worker currently in his employ has a permanent partial disability and he makes the conscious decision to hire or retain the individual. Id. As such, the requirement exists that one seeking to recover from the Fund must clearly establish that the era *591 ployer knowingly hired or retained a worker with a permanent partial disability or that the employer acquired actual knowledge of the permanent partial disability during the worker’s employment (but prior to the subsequent injury) and retained the employee. Id.
In this case, Mr. Williams was working for the same employer, Ruskin MFG, when the first incident occurred. Although the Board asserts that National | gUnion failed to provide any medical evidence wherein a treating physician permanently restricted or assessed a disability rating to Mr. Williams’ physical ability to perform his job duties following the first incident such that Ruskin MFG never attained knowledge of a permanent partial disability, the evidence introduced in support of National Union’s motion for summary judgment reflects that Ruskin MFG was aware that Mr. Williams had sustained an injury following the first incident and had accommodated Mr. Williams by placing him on light duty work. Cf. Louisiana Workers’ Compensation Corp., 691 So.2d at 126 (“although no label had yet been attached to [the employee’s medical problems prior to the second injury], the employer was well aware of [the employee’s] back injuries and had accommodated [the employee] by assigning him lighter duty work than he had been performing previously” such that the employer, although not aware of the specific medical diagnosis of pre-existing cervical spondylosis prior to the subsequent injury, had knowledge of the employee’s partial permanent injury,) National Union met its prima facie burden to show that the employer had actual knowledge of Mr. Williams’ preexisting permanent partial disability before the occurrence of the second injury. The Board did not present any evidence to demonstrate that a genuine issue of material fact remains. Accordingly, the Board’s second and third assignments of error are without merit.
In its fourth assignment of error, the Board contends that National Union failed to prove the statutory element of merger between Mr. Williams’ preexisting permanent partial disability and his subsequent injury. The Board asserts that National Union, as required by LSA-R.S. 23:1371(C), failed to show that Mr. Williams’ overall medical condition was materially and substantially greater than that which would have resulted had the preexisting permanent partial disability not been present. We note, however, that Dr. Ferrell attested that Mr. Williams’ prior torn rotator cuff and impingement syndrome merged with his subsequent job accident/second injury to create a materially and substantially greater disability than that which would have resulted had the preexisting rotator cuff|10tear not been present. Accordingly, National Union presented sufficient evidence to meet its pri-ma facie burden. The Board failed to introduce any evidence to show that a genuine issue of material fact remains. Assignment of error number four is without merit.[5]
CONCLUSION
For the foregoing reasons, the district court’s January 6, 2014 judgment granting summary judgment in favor of National Union is affirmed. Costs of this appeal in the amount of $2,282.00 are assessed to *592 appellant, the Louisiana Workers’ Compensation Second Injury Board.
AFFIRMED.
WHIPPLE, C.J., concurs in the result.

. In so ruling, the Board determined that there was no evidence that Mr. Williams had a preexisting permanent partial disability, that National Union had not established that Ruskin MFG had knowledge of any such preexisting injury, and that the pre-existing injury did not merge or combine with the subsequent injury.

. Specifically, Dr. Ferrell attested:
That he is a board-certified orthopedic surgeon;
That Jamesell Williams has been under his care since 2007;
That he has reviewed the medical records of Jamesell Williams related to his shoulder injuries prior to the time he became Mr. Williams’ treating physician;
That Jamesell Williams was initially injured in a work accident on April 2, 2001, in which he was struck in the left shoulder by a crate of louvers, thereby causing a torn rotator cuff;
That the rotator cuff tear sustained as a result of the work accident of April 2, 2001 constituted a permanent partial disability in that it limited the function and strength of Jamesell Williams' left upper extremity and resulted in restrictions on his ability to perform work as a saw operator;
That the rotator cuff tear sustained by Jamesell Williams in the accident of April 2, 2001 caused his left shoulder to become more prone and susceptible to further injury than it would have been if he had not suffered the injury of April 2, 2001;
That Jamesell Williams re-injured his left shoulder in a subsequent work accident on June 26, 2001 when he experienced pain in his left shoulder while cutting blades;
That as a result of the accident of June 26, 2001, Jamesell Williams suffered an aggravation of his preexisting rotator cuff tear and impingement syndrome;
That Jamesell Williams was required to undergo surgery on January 23, 2002 which consisted of acromioplasty, modified Mumford procedure, repair of rotator cuff tear, and subacromial bursectomy, and which was necessitated by a merger of Williams' injuries from the accident of June 26, 2001 with his preexisting rotator cuff tear;
That Jamesell Williams has been assigned permanent restrictions limiting his ability to lift and perform overhead work as a result of a merger between his left shoulder injuries resulting from the subsequent accident of June 26, 2001 and the preexisting rotator cuff tear resulting from the accident of April 2, 2001;
That Jamesell Williams' disability resulting from the subsequent injury of June 26, 2001 in conjunction with his preexisting left rota-tor cuff tear is materially and substantially greater than that which would have resulted had the preexisting rotator cuff tear not been present.

. In Louisiana Workers' Compensation Corp., we note that the employee was able to return to his previous job prior to the second injury, but the employer accommodated the employee "by placing him at machines where helpers were available to push and pull pipe." 691 So.2d at 126. Moreover, the employee "was not working at his job as a quality control inspector satisfactorily before the [subsequent accident].” Id. Specifically, an employer’s representative testified the employee "could not perform the tasks required of a quality control inspector without help from the employer after the [initial injuries], because of his continuing complaints of pain.” Id.

4. We note that LSA-R.S. 23:1378 was amended by 2010 La. Acts. No. 799, § 1, effective June 30, 2010, and that the knowledge requirement is now found in section A(2), which reads, in part:
No employer or insurer shall be entitled to reimbursement unless it is clearly established that the employer had actual knowledge of the employee’s preexisting permanent partial disability prior to the subsequent injury. For injuries occurring after December 31, 2010, actual knowledge shall be established only by any one of the following circumstances:
(a)The employee's preexisting permanent partial disability was caused by a compen-sable workers' compensation accident or occupational disease while employed by the same employer seeking reimbursement from the Second Injury Fund,
(b) Prior to the second injury, the employee disclosed to the employer the employee’s preexisting permanent partial disability on a form promulgated by the office of workers' compensation.
(c) The employer employs, retains, or reemploys employees from the PPD employee registry maintained by the Louisiana Workforce Commission and which is created and maintained in accordance with rules promulgated by the office of workers’ compensation.

. In its fifth assignment of error, the Board contends that the district court erred in concluding that all three statutory criteria, which are addressed in the first four assignments, have been met. Because we find no merit in the other four assignments, the fifth assignment of error is without merit.