J^PETERS, J.
On November 14, 2000, David Davis injured his back while pulling drill slips. At the time, he was in the course and scope of his employment with Nabors Drilling USA (Nabors). Davis’ employer appeals a workers’ compensation judgment rejecting *535 its motion to have Davis’ workers’ compensation benefits forfeited pursuant to La. R.S. 23:1208.1. For the following reasons, we reverse and order forfeiture of those benefits.
DISCUSSION OF THE RECORD
Davis began employment with Nabors on September 28, 2000, as a roughneck and floorhand. On that day, and as a condition of being hired, Davis completed a medical history questionnaire. Included on the medical history questionnaire was the following language:
NOTICE: YOUR FAILURE TO ANSWER TRUTHFULLY ANY QUESTIONS ABOUT PREVIOUS INJURIES, DISABILITIES OR OTHER MEDICAL CONDITIONS MAY RESULT IN FORFEITURE OF WORKERS’ COMPENSATION . BENEFITS UNDER LSA R.S. 23:1208.1.
In answering the questions posed on the medical history questionnaire, Davis denied having ever had “Shoulder Trouble” or a prior work injury and surgery and denied having ever received workers’ compensation benefits. These responses were false. Davis had in fact sustained a work injury to his shoulder on January 18, 1994, while employed by Petro Star Corporation (Petro Star). Treatment of this injury required surgery, and Davis received workers’ compensation benefits as a result of this injury.
Based on Davis’ failure to answer truthfully the questions posed by the preem-ployment medical history questionnaire, Nabors filed the instant pleading to have benefits forfeited under La.R.S. 23:1208.1. However, the workers’ compensation judge rejected Nabors’ forfeiture request on the basis of failure to show | ¡.a merger between the two work injuries. Nabors has appealed that judgment.
OPINION
La.R.S. 23:1208.1 provides in pertinent part: “Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee’s forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer’s ability to receive reimbursement from the second injury fund.”
[T]o be reimbursed from the second injury fund, an employer must prove the existence of three elements. An employer must prove that the employee had a [permanent partial disability] satisfying the requirements of La.R.S. 23:1378(F). That is, the [permanent partial disability] must be so serious as to hinder employment. Id. The employer must also prove he had actual knowledge of the employee’s [permanent partial disability] before the occurrence of the injury forming the basis of compensation claim. Finally, the employer must prove that the [permanent partial disability] merged with the injury to produce a greater disability. La.R.S. 23:1371(A); La.R.S. 23:1378(A).
Wise v. J.E. Merit Constructors, Inc., 97-0684, p. 12 (La.1/21/98), 707 So.2d 1214, 1220 (citation omitted).
For purposes of reimbursement from the second injury fund,
the merger of an injury with a preexisting permanent partial disability is limited to the following:
(1) The subsequent injury would not have occurred but for the preexisting permanent partial disability; or
(2) The disability resulting from the subsequent injury in conjunction with *536 the preexisting permanent partial disability is materially and substantially greater than that which would have resulted had the preexisting permanent partial disability not been present, and the employer has been required to pay and has paid compensation for that greater disability.
La.R.S. 23:1371(C).
The record establishes that Davis sustained an injury to his right shoulder on la January 18, 1994, while working for Petro Star. He began treatment with Dr. John Cobb, a Lafayette, Louisiana orthopedic surgeon, and was ultimately diagnosed with impingement tendinitis of the rotator cuff with hypertrophy of the distal clavicle and the acromion. In September of 1994, Dr. Cobb performed a partial acromionec-tomy, with resection of the distal clavicle and of the coracoacromial ligament. Thereafter, Davis returned to work. Following an examination on November 20, 1995, Dr. Cobb reported that he did not think that the work Davis was doing was “a reasonable thing for him to be doing.” The doctor stated: “He is going to have to resolve to do primarily light type work activities and not return to this unrestricted work that he is doing at the present time.” In March of 1996, Dr. Cobb stated: “I think working on the rigs, primarily handling the slips was what was causing his problem.” In May of 1996, Dr. Gregory Gidman, a Lafayette, Louisiana orthopedist, gave Davis an impairment rating of 10% to the upper extremity and 6% to the body as a whole.
Despite Dr. Cobb’s concerns and Dr. Gidman’s impairment ratings, Davis returned to work as a roughneck and floor-hand. He admits that he did not inform Nabors of his shoulder injury prior to the back injury he sustained on November 14, 2000, while pulling drill slips.
Following the work injury to his back, he began seeing Dr. Cobb, among other physicians, once again. An MRI of the lumbar spine revealed a disc herniation at L5-S1, and an EMG revealed right L5 radicular changes. Dr. Cobb spoke with Davis “about the implications of him returning to the oil field, that he would have to get something lighter.” Additionally, Dr. Cobb recommended surgery.
By letter dated May 10, 2001, counsel for. Nabors requested Dr. Cobb’s opinion regarding whether “as a result of having had the prior shoulder surgery Mr. Davis will have a greater disability as a result of a combination of the shoulder and the lumbar 14injury than he would have had solely from the lumbar injury itself.” Dr. Cobb responded by letter dated June 12, 2001, as follows: “It always seems a bit confusing to me regarding the Second Injury Fund, but based on what I understand from your correspondence, if he has a greater disability resulting from a combination of the shoulder and lumbar injuries than he would have had simply from the lumbar, I would agree that this patient would meet the criteria for reimbursement from the Second Injury Fund.” By letter dated June 25, 2001, counsel for Nabors attempted to clarify Dr. Cobb’s statement. On July 26, 2001, Dr. Cobb responded by letter to Nabors’ counsel as follows: “I ... would certainly agree that he would have a greater disability with the combined shoulder injury and lumbar injury.”
In denying the request for forfeiture, the workers’ compensation judge stated: “While Dr. Cobb’s letter establishes that there is a greater disability because there are two disabilities, it does not address any merger between the two, and I think that needs to be present. And therefore, I am denying the 1208.1 forfeiture request.” As an appellate court, we may not set aside a fact finder’s findings of *537 fact unless they are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). In this matter, we conclude that the workers’ compensation judge was clearly wrong in her factual conclusions.
In Southland Corp. v. State of Louisiana Workers’ Compensation, Second Injury Board, 593 So.2d 956 (La.App. 4 Cir.1992), the employee was electrocuted in 1972, which caused him to have a permanent partial disability consisting of the loss of his left hand from amputation and the clubbing of his right hand. In 1983, Southland Corporation hired him as a security supervisor. In 1985, the employee slipped and fell, sustaining a herniated disc at L5-S1 and severe narrowing of the disc space at L4-5. At issue was whether the employee’s disability resulting from his back | ^injury in connection with his preexisting injury was materially and substantially greater than it would have been had the employee not had the preexisting injury. The fourth circuit stated:
Common sense would seem to answer the question in the affirmative. Anybody with a herniated disc is usually disabled to some extent, but [this employee] is materially and substantially more disabled with his herniated disc because he has only one hand and that one is deformed.
But, we need not resort only to common sense.... [T]he orthopedic surgeon who treated [the employee] for his back injury, stated that he was more disabled because of his back injury, and he explained that [the employee’s] disability from the back injury was greater because of his preexisting disability in this way:
He had a below elbow amputation on one extremity, the left as I recall, and the right side, he had a severe contracture deformity of his right hand. You know, you put all of these things together, the hand disability, the absence of a left forearm and hand and put the back with it, well, naturally, it makes him more disabled.
The doctor further stated, “I think he’s more disabled with the back added to his previous problem which makes it more difficult for him to get a job, to work at some job in a meaningful way.”
Id. at 958.
Likewise, in the instant case, common sense indicates that Davis, who already has a 6% impairment rating to the body as a whole, is materially and substantially more disabled with the herniated disc added to his already impaired body. Further, as in Southland Corp., Dr. Cobb stated that Davis would have a greater disability with the combined injuries. There is no contrary evidence in the record. Thus, the evidence does establish that there exists a sufficient merger between Davis’ subsequent and prior injuries to satisfy the requirements of La.R.S. 23:1371(C)(2). However, because Nabors had no knowledge of Davis’ preexisting permanent partial disability, it could not seek reimbursement from the second injury fund and was thus prejudiced by Davis’ failure to answer truthfully the medical history questionnaire. Therefore, pursuant to La.R.S. 23:1208.1, Nabors was entitled to have Davis’ | ¿workers’ compensation benefits forfeited. Accordingly, we reverse the judgment denying Nabors’ request for forfeiture of benefits under La.R.S. 23:1208.1.
DISPOSITION
For the foregoing reasons, we reverse the judgment below and order forfeiture of David Davis’ workers’ compensation benefits. We assess all costs to David Davis.
REVERSED AND RENDERED.